E. MAUNEY & SON v. W. A. COIT.

*Partners—Commercial Paper—Protest.*

1. When a draft on a third person is given in settlement of an antecedent debt, it is the duty of the holder to present it, and to give notice of its dishonor if not paid, and a failure to do so will discharge the debt.

2. Where a settling partner, after the dissolution of the firm, gives a draft in payment of a partnership debt, he cannot waive protest so as to bind his former copartner, especially when the latter has been a dormant member.

CIVIL ACTION tried at Fall Term, 1878, of ROWAN Superior Court, before *Graves, J.*

The facts necessary to an understanding of the case are embodied in the opinion of this court. Verdict for plaintiffs, judgment, appeal by defendant. See *Bradford* v. *Coit*, 77 N. C., 72.

*Mr. J. M. Clement*, for plaintiffs.
*Messrs. McCorkle* and *Bailey*, for defendant.

SMITH, C. J.  The record sets out numerous exceptions taken by the appellants during the trial before the jury, to the adverse rulings of the court in the admission and rejection of evidence which need not be considered in disposing of the appeal.

The defendent is sued as a dormant and newly discovered partner of Amos Howes, with whom the debt alleged to be due to the plaintiffs' was contracted, and the verdict finds such partnership to have existed.  The business conducted by Howes alone and in his own name terminated on the 1st day of June, 1874, and the Gold Hill mining property under a sale passed into the possession of a corporation known as the North Carolina Amalgamating Company, its successor, and Howes then proceeded to settle up his business.

On the 2d of June, Howes gave to the plaintiffs five several drafts on the said corporation, of which one was at thirty days for $3,000; a second at thirty days also, for $2,000; a third at three months for $3,500; a fourth at five months for $3,000, and the last at six months for $1,000, in the aggregate sum of $12,500, and at the same time paid them $500 in cash.

These drafts the jury say, in response to one of the issues submitted to them, closed the plaintiffs' account, and in amount were sufficient, as the plaintiffs admit to pay the entire indebtedness due to them.  The two earliest maturing drafts were paid and the others duly accepted by the company.  At the maturity of the third draft, the first falling due of those unpaid, Howes gave to the holders a writing in the following words:  "Salisbury, N. C., Sept., 3d, 1874.  I, Amos Howes, do hereby waive protest of all the above stated drafts and agree to any extension of time the holders may assent to. (Signed), Amos Howes."  Which writing was appended to a descriptive list of claims among which the three unpaid drafts are mentioned.

This agreement of Howes was entered into more than

three months after the dissolution of the alleged partner-
ship association, and the entire discontinuance of its opera-
tions, and, so far as the case discloses, without any new
consideration therefor. It does not appear whether the
drafts were taken by the plaintiffs in payment or as a col-
lateral security for their debt, nor that any arrangement
was made by the holders with the acceptors for extending
the time of payment; nor that any measures were adopted
to collect or secure the drafts, nor is any excuse or explana-
tion offered of the failure to do so. . The drafts themselves
were produced at the trial and tendered to the defendant.

Upon this evidence and defect of evidence various in-
structions were asked by the defendant's counsel, the first of
which, embodying the substance of all, is in these words:
"If the plaintiffs received from Amos Howes his drafts on
the North Carolina Gold Amalgamating Co., accepted by
said company, then no recovery can be had upon the ac-
count existing at that time, notwithstanding that Howes,
the drawer, may have waived notice of protest." This and
the other instructions were refused, and none of like import
given in their stead. In this there is error.

The true rule which should have been laid down for the
guidance of the jury may be thus stated :

If the drafts were given and received for and in closing
up the account, and were afterwards accepted by the com-
pany, it was the duty of the plaintiffs to present them at
maturity for payment, and if not paid within a reasonable
time to take proper steps for their collection, and if they
failed to do this, and the drafts became worthless, it would
in law be a discharge of the original debt, and the defend-
ant is not affected by the written agreement of Howes in
reference thereto.

The principle contained in the proposed instruction rests
upon sound reason and is sustained by ample authority.

In *Smith* v. *Wilson*, Andrews Rep., 187, LEE, C. J., thus

declares the law : " When a note is taken for a precedent debt, which is the present case, it must be intended to be taken by way of payment upon this condition, that the note is paid in a reasonable time; but if the person accepting it doth not endeavor to procure such payment, and the money is lost by his default he must, and it is reasonable he should, bear the loss."

In *Chamberlyn* v. *Delarive,* 2 Wils., 350, the defendant being indebted for work and labor done, gave the plaintiff a draft on one Heddy for the sum due, and the plaintiff held the draft for four months without applying to Heddy, and he became insolvent. It was held that there could be no re-covery in an action brought on the original indebtedness, and the court say : " The plaintiff by accepting the note or draft undertook to be duly diligent in trying to get the money of Heddy and to apprize the defendant, the drawee, if Heddy failed in payment. The plaintiff substituted him-self in place of the defendant, who has been deluded into a belief that the plaintiff had got the money of Heddy."

In a very similar case where the bill given " for and on account " of a precedent debt, EARLE, C. J., with the concur-rence of all the judges lays down the rule thus: " The legal effect of taking a bill as collateral security is, that if, when the bill arrives at maturity, the holder is *guilty of laches and omits duly to present it,* and to give notice of its dishonor if not paid, the *bill becomes money in his hands,* as between him and the person from whom he received it. That being so the *plaintiff's debt is satisfied. Peacock* v. *Purcell,* 108 Eng. C. L. R. 728. " When a party contracts a debt," says a recent writer on this subject, "and contemporaneously gives in additional payment, his draft upon a third party, it is the duty of the creditor to present it in a reasonable time for acceptance or payment, and to give notice in the event of its dishonor to the drawer. If he fails to make such pre-sentment or to give such notice the drawer is not only *dis-*

*charged from liability on the bill, but also from the debt or consideration, for or on account of which it was given.* 2. Danl. Neg. Instr. § 1276. To the same effect are the cases of *Dayton* v. *Trull,* 20 Wend. 345 ; *Jones* v. *Savage,* 6 Wend. 658.

It only remains to consider the latter branch of the instruction, the effect upon the rights of the parties and their relations as creditor and debtor, of the writing given by Howes at the maturity of the first draft. What is the fair and reasonable interpretation to be put upon the words of this instrument, and what would be their force and effect in an action brought against Howes himself, it is quite certain they cannot be allowed to enlarge the liabilities of the defendant, or to deprive him of any just defence against the plaintiffs' demand. The drafts were the *personal* acts of the managing and settling partner, and not less so was his subsequent consent to the extension of the time of payment by the holder. The partnership was at an end, and his authority was restricted to what was necessary in settling the business. He had no power to bind his associate by new contracts not required for that end. The agreement seems to be a mere gratuity and can bind no one but himself.

" Partners after dissolution," says Judge STORY, " cannot contract new debts, but may pay and collect debts, apply the partnership funds and effects to the discharge of their own debts, adjust and settle the unliquidated debts of the co-partnership, receive any property belonging to the partnership, and may make due acquittances, discharges, receipts and acknowledgements of their acts in the premises." Story Part., § 328.

Retiring members of a firm are not bound by instruments, negotiated in the name of the original firm, after its dissolution, even though they are negotiated by the partner authorized to settle the partnership business. Collyer Part., § 541; 1 Tudor's Lead. Cases, Mercantile and Maritime Law ;

notes in *Waters* v. *Taylor,* ...... ·513; 89 Law Lib., 635; *Evans* v. *Drummond,* 4 Esp. 89.

The principle applies with greater force for the protection of a dormant than an active and known partner whose name is associated with the partnership business. The former is chargeable to third persons only on contracts entered into while the firm was in operation, and he was sharing in the emoluments and profits of the joint business, and his liability as such ceases on his retirement, even without notice, for the reason that those dealing with the partnership have never trusted to his credit, and his liability grows out of the fact that he is a contracting party, taking a part of the profits of such contracts. Collyer Part. § 536; Ross on Sur. Ag. Part. & Ins.; 89 Law Lib., 635.

This view of the case, though contained in the instructions asked for defendant, was not presented in the charge to the jury, and as the defendant was entitled thereto, there must be a new trial.

Error.                                    *Venire de novo.*