E. MAUNEY & SON v. WILLIAM A. COIT.

*Partnership, evidence of—Running Account—Statute of Limitations.*

1. Where plaintiff sued defendant for goods sold and delivered to A, *it was held* no error to admit proof that the goods were so sold, before establishing a partnership between A and the defendant. The order in which evidence essential to a recovery in such case may be introduced, is left to the discretion of the presiding judge.

2. The test of a person being a partner is his participation in the profits of the business *as such*, (involving also a common liability for losses), except in cases where the profits are looked to as a means of ascertaining the compensation for services rendered under a special contract.

3. The charge of the court below upon the law governing the formation of partnerships, sustained.

4. A note or draft received for goods sold and delivered is not a discharge of the debt, but the plaintiff, upon surrendering the same or proving its loss, is at liberty to sue for goods sold and delivered.

5. The statute of limitations begins to run only from the date of the last item in accounts where the items are parts of one continuing mutual account, and the same may be inferred where each party keeps a running account of the debits and credits, or where one, with the knowledge of the other, keeps it.

(*State* v. *Jackson*, 82 N. C., 565; *Reynolds* v. *Pool*, 84 N. C., 37; *Wilson* v. *Jennings*, 4 Dev., 90; *Patton* v. *Atkinson*, 1 Ired., 262; *Green* v. *Caldcleugh*, 1 Dev. and Bat., 320, cited and approved.)

CIVIL ACTION, tried at January Special Term, 1882, of DAVIDSON Superior Court, before *Seymour, J.*

This action has for its object the recovery of a balance due the plaintiffs for goods sold and delivered and moneys advanced during the years 1871, 1872, 1873 and part of 1874, to one Amos Howes, trading and mining, at a place known as Gold Hill, in Rowan county, in his own name, and to charge the defendant as a dormant, and until a later date, undiscovered partner associated with him in business, with a liability therefor. This residuary indebtedness was ascertained to be about the first of June, 1874, as the plaintiffs allege, in amount $7805.76, for which, with other advances which the plaintiffs undertook to make and did afterwards make for the benefit and relief of said Howes, he then drew on a corporation known as the North Carolina Gold Amalgamating Company in favor of the plaintiffs, his drafts of that date maturing and in the sums following:

One at thirty days after sight, for.................. $2,000:
A second on same terms, and amount........... $3,000:
A third at 3 months after sight for.............. $3,500:
A fourth at 5 months after sight for ............. $3,000:
And the last at 6 months after sight for .......... $1,000;
not as the plaintiffs say, in discharge, but as a means of payment of the accumulated indebtedness.

The drafts were presented and accepted on June 5th, the

two first falling due paid at maturity, and payment of the others refused by the company.

The drawer, Howes, anticipating the disbonor of the three unpaid drafts annexed to a list of them and executed the following paper writing, dated Sept. 3d, 1874, at Salisbury, N. C.: "I, Amos Howes, do hereby waive protest of all the above stated drafts, and agree to any extension of time the holders may assent to."

On September 15th, 1873, Howes conveyed by deed in trust to Franklin Coit, procured, the plaintiffs aver, through the influence of the defendant and with a fraudulent intent towards creditors, the Gold Hill mining property under the pretext of securing a large sum, $27,000, recited to be due to the defendant; and thereafter on July 10th, 1874, the trustee and defendant united in a deed for the same real estate to the said North Carolina Gold Hill Amalgamating Company, and the company at the same time reconveyed by mortgage to the defendant to secure the same sum mentioned in the first deed, and as a substituted arrangement therefor. The property was sold under the mortgage on August 28th, 1875, to W. L. Holmes and R. J. Holmes for a large sum, whereof they paid in cash $2,500 and gave notes on time for the residue, one of which in the sum of $7,500, due at 24 months from date with interest from date and payable to the defendant, has been attached as part of the assets of the alleged copartnership, to await the determination of the action.

The plaintiffs' account with Howes commences with a balance against him in a previous statement brought down to January 31st, 1874, and entered as of February, and consists of a series of items, of both the credits and debits, extended to June 2nd, showing an excess then due to plaintiffs of $6,611.84.

The account exhibited by Howes consists of amounts brought forward and entered on the last of April, 1874, and

continued in items on either side thence, the one to June 2nd, the other to July 10, wherein Howes charges himself with the drafts given at the former date, and this statement shows an excess of $1,878.74 due to him.

The plaintiffs allege that the defendant studiously concealed from them and others his partnership relations with Howes, on discovering which from the correspondence between the parties and otherwise, they commenced their suit, and that the series of acts of the defendant charged in the complaint were fraudulent contrivances to screen the common property from creditors and secure it to the defendant.

The defendant denies every imputation of fraud or concealment, alleges that he was not a partner secret or otherwise with Howes, and their only relations were those subsisting between creditor and debtor; that the indebtedness to him was *bona fide* and the conveyances made solely for its security and payment; and, denying his liability for the debts of Howes or possession of information to enable him to form a belief as to the extent of the plaintiffs' claim, insists, if he had incurred liability in the premises it had been discharged by the plaintiffs' accepting the drafts of Howes and failing to have those presented for payment protested and notice thereof given to him; and further that the plaintiffs' demand is barred by the statute of limitations.

Upon issues submitted to the jury, put in the form of propositions, they find:

1. There was a copartnership existing between Amos Howes and the defendant in carrying on the business of mining and merchandizing at Gold Hill, in North Carolina.

2. The existence of the copartnership was concealed by the defendant from the public for the purpose of avoiding liability for its indebtedness.

3. The plaintiffs sold and delivered to Howes, goods, wares and merchandize, and advanced moneys for the benefit and at the instance of the copartnership and while it

subsisted, in the amount of $7,500 without interest at June 1st, 1874.

4. The drafts were not taken by the plaintiffs in payment of their claim, but as collateral security for it. The note of W. L. and R. J. Holmes for $7,500 mentioned in the pleading is a portion of the firm assets.

6. The plaintiffs' cause of action accrued within three years next before its commencement.

Upon these findings the court gave judgment for the plaintiffs, which is set out in full in the record, and the defendant appealed.

*Messrs. J. M. Clement* and *Watson & Glenn*, for plaintiffs.
*Messrs. J. M. McCorkle* and *W. H. Bailey*, for defendant.

SMITH, C. J., after stating the above. This brief statement prepares us to enter upon a consideration of the appellant's exceptions.

1. The defendant objects that the plaintiffs were permitted to proceed with the proof of the goods sold and money advanced to Howes, before showing his association with the defendant in the business.

The force of the objection is directed against the order of introducing the testimony and not against the testimony itself. It is a necessary part of the proof to establish the defendant's liability that the debt should have been contracted, and it was not inappropriate and certainly not erroneous to allow it to be introduced early in the trial. If the plaintiffs should fail to connect the defendant with the transaction afterwards, they must fail in their action. The order in which the parts of the whole evidence essential to a recovery shall be introduced, must be left to the discretion of the presiding judge, who will correct any injury which might follow the failure to offer the other necessary and connecting evidence, by directing the jury to discard

it. This is decided in the recent case of *State* v. *Jackson*, 82 N. C., 565, where the rule of practice is stated.

2. The defendant further objected to the admission of evidence that in September, 1874, the sheriff was in possession of the personal property of the corporation acceptor, and that the laborers in its employ had liens, as a means of showing its insolvency at that time. This exception seems to have been inadvertently set out in the case, since it is expressly stated therein that "the company on which the drafts were drawn was, *as was admitted by defendant,* and found by the jury, insolvent in September, 1874."

3. The ground of the objection to proving that at the former trial of the cause the unpaid acceptances had been produced in open court and tendered to Howes, is not stated and we are unable to see its force or pertinency.

It is stated by the court in the case before us that there was a vast volume of evidence consisting mostly in depositions and letters, and consuming several days in the reading, on the question of partnership between Howes and the defendant, from which each party has selected a very small portion for the reviewing court, and that none of it is material in presenting the points of law involved in the appeal. We are therefore confined to an examination of the principles of law laid down for the guidance of the jury, mostly in abstract form, in passing upon the issues. The correctness of the instructions given and the denial of others asked by the defendant, are next to be considered.

1. The jury were charged in substance, at the plaintiffs' instance, that if there was an agreement in regard to the conducting of business and mining operations between Howes and the defendant, that the latter should furnish goods or money, or both, towards the capital stock, and in return, and as part of the profits should receive or be entitled to 7-16ths, or other part or proportion of the mine or mining property, whether with or without any share or pro-

portion of the proceeds of the store or mine, or with or without interest on money supplied, or commission on goods purchased, this would in law constitute a partnership as to creditors. And this would be so, although there was a further arrangement between themselves that defendant should not thereby become a partner ; that Howes should repay to defendant the money and goods advanced with interest and commissions, and that the latter should have no share in the results of the business until such repayment and all the incurred debts were discharged.

But the court added to the instruction a proviso that the interest which the defendant was to acquire was to come out of the profits of the business.

2. That if the defendant and Howes combined to conceal their joint interest and copartnership relations, and the information was kept from the plaintiffs during and before the year 1874, there would be no want of diligence on their part in omitting to give notice of the refusal of the acceptors to take up the matured drafts.

3. If both drawer and drawee were insolvent on September 4th, 1874, there was no laches in failing to bring and prosecute a useless suit.

At the defendant's request the jury were further instructed :

4. If the defendant furnished money or goods to aid Howes in working the mine, this would not render him liable as a partner, unless there was a preponderance of evidence that he was to participate in the profits, and if the jury were not satisfied with the proofs of the partnership, their verdict should be that none existed.

5. If the drafts were received, and so intended to be, in payment of the then subsisting debt, the plaintiffs could not recover.

6. The retention by the plaintiffs of the drafts after dis-

honor, is some evidence to the jury that they were accepted as payment.

The following instructions asked by defendant were refused :

7. If the drafts were received, either as payment or collateral security for the pre-existing debt, it was the plaintiffs' duty to present them when due to the acceptor, and if not paid, give notice to the defendant or Howes, and their failure to do so, exonerated the defendant from further liability, notwithstanding the waiver of Howes—the firm, if it ever existed, having been dissolved by the conveyance of the property on May 31st, 1874, to the company, and the consequent cessation of the joint business.

8. The accounts between the parties were not mutual and running, consisting of reciprocal demands, so as to protect from the operation of the statute of limitations the items entered of dates more than three years preceding April 28th, 1877, when the summons was sued out.

Taking the charge as a whole, upon the question of a copartnership and common responsibility, it affords the defendant no just occasion of complaint. It does not appear that any exception was taken to the exposition of the principle of law governing the formation of partnerships and the liabilities assumed by the members to those having dealings with them, when constituted. A participation in the profits of the business, *as such,* involving also a common liability for losses, unless this be excluded by evidence to the contrary, as in the exceptional cases in which the profits are looked to, as a means only of ascertaining the compensation which under the contract is to be paid for the services of an employee or some other specific obligation, many of which will be found in the note appended to the case of *Reynolds* v. *Pool,* (84 N. C., 37,) contained in the American Reports, vol. 37, p. 609, seems to be the well settled rule prevailing in this state for determining the existence of a co-

partnership, in the relation of its members to those who may deal with it and become creditors.

The necessary conditions seem to have been laid down by the court, and we must assume they were met in the evidence produced before the jury. We are content with a few references. Lindley on Part., 66; 1 Pars., Cont., 147; Add, Cont., §§ 1293, 1294; Chitty Cont., 318, 322, note f., and cases cited in *Reynolds* v. *Pool, supra.*

The writing signed by Howes dispensing with notice to him of the non-payment of the drafts, relieved the plaintiffs from the duty of advising him of the drawee's refusal, and their total ignorance at the time of the defendant's legal liability for the debt dispensed with the duty of giving the notice to him, if, indeed, he, not being a party to the drawing, was in law, when known, entitled to notice.

The receiving of the drafts was not presumptively a satisfaction or discharge of the debt for which they were given, and it is affirmatively found by the jury that they were given as collateral security only. "A note given by all the parties to pay for the goods delivered," says DANIEL, J., "would not extinguish the original undertaking like a bond or judgment taken for it. The plaintiffs might still maintain their action for goods sold and delivered, provided they produced and delivered up the note on trial, or proved it was destroyed. *Wilson* v. *Jennings*, 4 Dev. 90.

The same rule was laid down in a case where the two partners after dissolution gave their note for goods sold, on which payments were made and then the note taken up, and a bill of exchange for the amount due on it substituted by one of them only, and it was declared that on surrendering the bill the action would lie upon the original contract of sale. *Patton* v. *Atkinson*, 1 Ired., 262.

When this case was before us upon the defendant's former appeal (80 N. C., 300,) we stated the rule, applicable to the facts then appearing, to be, that "if the drafts were given

and received, for and in closing up the account, and were afterwards accepted by the company, it was the duty of the plaintiffs to present them at maturity for payment, and, if not paid in a reasonable time, to take proper steps for their collection, and if they failed to do this and the drafts became worthless, it would in law be a discharge of the original debt, that is, of course, if they were lost by reason of the neglect of the holders to , proceed to collect, and could have been collected by the use of reasonable diligence on their part." It is now, however, shown that any effort to enforce payment by action would have been fruitless in consequence of the insolvency of the acceptor, and the law does not require the holder to do a "*vain thing.*"

The last and remaining question to be noticed is as to the application of the statute of limitations to a part of the account. The case cited for the plaintiffs (*Green* v. *Caldcleugh,* 1 D. & B., 320,) is so directly in point and conclusive, that we do not deem any further references to be required. The principle is there announced that the statute does not apply to those running accounts in which the "items are clearly parts of one continuing mutual account, which by the consent of the parties are to be charged therein whenever the same are to be adjusted." "It may be inferred," adds Judge DANIEL, " when each party keeps a running account of the debits and credits of the account, or when one only, with the knowledge and concurrence of the other, is confided in to keep the account of all the mutual dealings."

In the present case, accounts are kept both by the plaintiffs and by Howes, each embracing reciprocal charges and credits, against and for each other, in frequent entries and extending down to a period within which the statute does not operate, and thus all the conditions of the rule are fulfilled and the bar removed from all the items. C. C. P., § 39.

These are the only exceptions necessary to be noticed, and finding no error in the rulings, the judgment must be

affirmed. As the cause has not been finally disposed of in the court below, it must be remanded for further proceedings therein, and it is so ordered.

No error. Affirmed.