THE CITIZENS BANK AND TRUST COMPANY v. J. J. KNOX, E. C. WOODBURY AND W. E. MAULTSBY, PARTIES TRADING AS EL PASO LUMBER COMPANY.

(Filed 9 April, 1924.)

**1. Actions—Bills and Notes—Payment—Burden of Proof.**

Where the plaintiff produces in evidence the defendant's note, uncanceled, upon which suit was brought, the burden is on the defendant to show that he had paid it, in order to establish this as a defense.

**2. Banks and Banking—Drafts—Collection—Actions—Notes—Discharge of Debt Pro Tanto—Rule of Prudent Man.**

Where a bank accepts for collection a bill of lading attached to a draft, upon agreement that the money would be applied to a note the drawer owed it, the bank is under legal obligation to exercise the care of an ordinarily prudent man to collect the draft and apply its proceeds in accordance with its agreement; and an instruction upon a trial on the note that if the jury found that the draft had not been paid to answer the issue in favor of the plaintiff bank is reversible error, for whatever moneys the plaintiff should have received under the rule stated would be a discharge *pro tanto* of the note it sued on.

STACY, J., took no part in the consideration or decision of this case.

CIVIL ACTION tried before *Grady, J.,* and a jury, at September Term, 1923, of NEW HANOVER. Appeal by defendants.

The plaintiff bank instituted this suit against the defendants to recover the sum of $500 and interest, balance due on a note made 21 March, 1921, by Widemer Lumber Company and signed by A. N. Harper, president, at 10 days, for $800. The note was endorsed by J. J. Knox for himself and on behalf of the other defendants, partners. They obtained from the plaintiff $800, less the usual discount. On 13 April, 1921, $300 was paid on the note.

The Widemer Lumber Company is insolvent. The defendants, as a defense to the action, say: "That they placed in the hands of the plaintiff a draft upon the Widemer Lumber Company for the sum of $500 with bill of lading attached, said bill of lading showing a shipment of

lumber to the said Widemer Lumber Company of the value of $500, which draft was collected by the plaintiffs and applied to the note that the plaintiff is now suing upon, as these defendants allege, and as the same was not applied, that the sum of $500 is now in the hands of the plaintiff, belonging to these defendants, which should have been credited to said note."

J. J. Knox, a witness for defendants, testified in part, that the El Paso Lumber Company had dealings with the Widemer Lumber Company, and it owed his company about $2,000. The note was endorsed by him on 21 March, 1921. When this draft of $500 was sent in he first went out to see Mr. Harper, president of the Widemer Lumber Company. "In consequence of what Mr. Harper told me I went to the bank and asked Mr. LeGrand, the cashier, if he had a draft in there with a bill of lading attached for a carload of lumber to be applied to the El Paso Lumber Company note, and he said 'Yes.' Mr. LeGrand said there was a bill of lading there with the draft attached, with the understanding that it should be applied to this $500 note, as $300 had already been paid on the note. The $500 was never applied to the note. I do not know whether the bill of lading was ever surrendered by the bank. I went to see Mr. LeGrand again after that, and he told me that a part of the draft was taken out for indebtedness that was owing on the shipment. . . . I went back to see Mr. Harper about that, and Mr. Harper said that he did not owe anything."

"Q. Was any portion of that money, of the $500 of that draft with the bill of lading attached for the lumber that was shipped, ever applied to this note by the Citizens Bank? A. Not to my knowledge."

A. N. Harper testified in part: "I recall this note of $800 that was signed by the Widemer Lumber Company, and that is my signature. The money was borrowed for the purpose of applying to an indebtedness that I was due to the El Paso Lumber Company. To the best of my recollection the credit of $300 was paid by the Widemer Lumber Company. Well, we owed the El Paso Lumber Company some money, and Mr. Knox had been out there once or twice about the balance, and I told him—I taken the bill of lading into the bank, signed the bill of lading by the Coast Line, and told them I wanted the draft on the party I was shipping the lumber to, and attached a draft on the bill of lading, and the proceeds were to go to the credit of this note. I gave those instructions to one of the bank officials. I am not sure if it was Mr. LeGrand or Mr. James."

The other testimony is not necessary to be set forth for the decision of the case, and the only assignment of error material to be considered is the following to the charge of the court below: "The records of the bank have been introduced in evidence here showing that the draft was

not paid and that it was returned to the bank unpaid. Now if, in the face of that record, you find that that draft has been paid you will answer the issue Nothing; if you find it has not been paid you will answer it $500 with interest. Go back and see how you find it. The bill of lading hasn't got anything to do with it." The jury returned a verdict for plaintiff for $500 and interest.

The court gave judgment for the plaintiff and the defendants assigned error, and appealed to this Court.

*Wright & Stevens for plaintiff.*
*Herbert McClammy for defendants.*

CLARKSON, J. The Widemer Lumber Company owed the plaintiff bank a balance of $500 on a note endorsed by J. J. Knox for his firm, El Paso Lumber Company; A. N. Harper was president of the Widemer Lumber Company. Harper testified: "I taken the bill of lading into the bank, signed the bill of lading by the Coast Line, and told them I wanted the draft on the party I was shipping the lumber to, and attached a draft on the bill of lading, and the proceeds were to go to the credit of this note. I gave these instructions to one of the bank officials."

It is well settled that where one signs a note and the plea of payment if set up as a defense, the burden is on the defendant to show payment. *Ellison v. Rix,* 85 N. C., 80.

The defendant's testimony, if believed, tended to show in the instant case that to pay the note a draft of $500 with bill of lading attached was turned over to the officials of plaintiff bank. The bill of lading showing a shipment of lumber by the Coast Line Railroad, and a draft with the bill of lading attached, were left with plaintiff bank, and the proceeds were to go to the credit of the $500 note. The court below in the charge told the jury "The bill of lading hasn't got anything to do with it." In this we think there was error. We think the court should have instructed the jury that if from the evidence they found the facts to be that A. N. Harper, president of the Widemer Lumber Company, turned over to an official or officials of plaintiff bank a draft of $500 with bill of lading attached showing a shipment of lumber by the Coast Line Railroad, with the understanding and agreement that the proceeds were to go to the credit of the $500 note on which J. J. Knox and others were endorsers, the burden was on the bank to show due diligence and care, that is, such diligence and care as a man of ordinary prudence would exercise under the same or similar circumstances in collecting or enforcing the draft with the bill of lading attached. If the plaintiff did not exercise this care and diligence, and by reason thereof the value of the lumber at the time the bill of lading

attached to the draft was lost, the defendant J. J. Knox and other defendants would be entitled to credit for the market value of the lumber, at the time it was lost, on the note sued on.

"An order drawn by the debtor upon a third person in favor of the creditor, for the payment of money or goods, is not a payment of the debt unless such order has been actually paid or accepted by the creditor as a discharge of the debt *pro tanto.* It is not enough that the creditor accepts the order unless he accepts it as a payment. On the other hand, if the order is accepted by the creditor as payment, or is actually paid to the creditor, or if the creditor agreed to accept such an order when the debt was created, the debt is extinguished *pro tanto. At any event, where due diligence is not used in collecting or enforcing the accepted order, whereby the claim is lost, the order is deemed a payment."* 30 Cyc., p. 1191. (Italics ours.)

Page on the Law of Contracts (2 ed.), vol. 5, sec. 2814 (in part), lays down the just rule: "Omission of the creditor to use proper diligence in collecting the draft will make the draft operate as a payment to the extent of the injury caused."

*Nash, J.,* in *Ligon v. Dunn,* 28 N. C., 137, says: "Payment may be made also in a bill of exchange or a promissory note though the receipt of neither is in itself a payment, for neither is money. But if received, and the creditor *do not use the necessary diligence to get it paid, the defendant will be discharged."* (Italics ours.) *Terry v. Robbins,* 128 N. C., 142.

"When this case was before us upon the defendant's former appeal (*Mauney. v. Coit,* 80 N. C., 300) we stated the rule, applicable to the facts then appearing to be, that 'if the drafts were given and received, for and in closing up the account, and were afterwards accepted by the company, it was the duty of the plaintiffs to present them at maturity for payment, and if not paid in a reasonable time, to take proper steps for their collection, and if they failed to do this and the drafts became worthless, it would in law be a discharge of the original debt, that is, of course, if they were lost by reason of the neglect of the holders to proceed to collect and could have been collected by the use of reasonable diligence on their part.' It is now, however, shown that any effort to enforce payment by action would have been fruitless in consequence of the insolvency of the acceptor, and the law does not require the holder to do a 'vain thing.'" *Mauney v. Coit,* 86 N. C., 471.

From the view we take of this case there must be a new trial, so that the jury can pass on the facts under the law as we interpret it to be. For the reasons given there must be a

New trial.

STACY, J., took no part in the consideration or decision of this case.