## UTAH STATE NAT. BANK v. LIVINGSTON et al.

No. 4462.   Decided March 25, 1927.   (254 P. 781.)

*Soule, Boyd & Spalding,* of Salt Lake City, for appellant Livingston.

*Story & Crow,* of Salt Lake City, for appellant McCornick.

*Young, Boyle & Moyle* and *James M. Christensen,* all of Salt Lake City, for respondent.

CHERRY, J.

This is an action upon a promissory note for $5,000, the execution and delivery of which were admitted, but which defendants pleaded and attempted to prove had been paid. The action was tried twice in the district court. The first time was before a jury and resulted in a verdict for defendants. Upon plaintiff's motion the verdict was set aside, upon the grounds of insufficiency of the evidence to support the verdict and a new trial granted. At the second trial, also before a jury, the court, at the conclusion of the evidence, directed a verdict for the plaintiff, upon which judgment was entered and from which defendants have separately appealed.

Appellants complain that the action of the trial court in setting aside the verdict in favor of defendants and granting a new trial was an abuse of discretion and error, for which the judgment appealed from should be reversed and judgment ordered entered upon the first verdict. Such a claim was sustained in *Hirabelli v. Daniels,* 44 Utah, 88, 138 P. 1172, but upon a record and state of facts

quite dissimilar from the case at bar. The granting of a new trial rests so largely in the discretion of the trial court that its action in that regard will not be disturbed unless there is a clear abuse of discretion. *Valiotis v. Utah Apex Mining Co.*, 55 Utah, 151, 184 P. 802. The evidence at the first trial of the instant case was very similar in its general aspects to the evidence at the second trial presently to be considered. Without reviewing the evidence taken at the first trial it is sufficient in this connection to state that upon the essential matter in dispute the evidence was substantially conflicting. As was said in the case last above cited:

"In such a case this court must hold as a matter of law that no abuse of discretion is shown."

The contention that the trial court abused its discretion by granting a new trial is therefore denied.

The important and serious question in the case arises out of the action of the trial court in directing a verdict for the plaintiff at the second trial. Appellants insist that the evidence of payment of the note sued upon was ■ sufficient to be submitted to the jury, and that the court erred in its peremptory instruction to find a verdict for the plaintiff. To illustrate the point to be decided the facts may be summarized as follows:

The note sued upon was executed by defendant Livingston as sole maker, upon which defendant McCornick was an accommodation indorser before delivery. Livingston was indebted to the plaintiff bank upon numerous other notes, aggregating a large sum. Under general pledges as collateral security for Livingston's indebtedness to it the bank held certain shares of corporate stocks of the Abraham Irrigation Company and United States Fuel Company. While Livingston was liable on other notes to the bank, the controversy here concerns seven notes of the total principal amount of $47,912.62. Upon six of these notes Livingston alone was liable, and, as before seen the other note here sued upon was indorsed by McCornick. It was admitted that McCor-

nick and Livingston had transferred certain stocks to the bank in payment and satisfaction of notes, but the parties are in dispute as to which particular notes were thereby paid. The bank claims that six notes aggregating $42,912.62, principal amount, and upon which Livingston was alone liable, were the only notes discharged by the transaction, while the defendants assert that there was an agreement by the bank to accept the stocks transferred in payment of seven notes aggregating $47,912.62, principal amount, including the note sued upon. Defendants produced evidence that during the summer of 1921, the bank was pressing Livingston for payment of his obligations; that Livingston called upon Mr. W. R. Wallace, a former officer of the bank and an individual creditor of Livingston, to aid him in arranging a settlement with the bank. At the time McCornick and Livingston had pledged in another bank (Zion's Savings Bank & Trust Company) 80,000 shares of stock of the United States Fuel Company to secure the payment of a note for $45,000. This stock was worth considerably more than the note for which it was pledged. After conferring with Livingston, and at his request, Wallace stated to the vice president and cashier of the bank that Livingston desired to pay his personal obligations by getting McCornick to release the 80,000 shares of stock which were at the Zion's Savings Bank & Trust Company and use them, together with other collateral already pledged therefor, in payment of his personal obligations at the Utah State National Bank.

Livingston testified to a conversation with the cashier and vice president of the bank, wherein he explained that the 80,000 shares of stock were in the other bank; that McCornick had an interest in it; and that it would be necessary to get McCornick to assign his interest in it in order to use it in payment of the notes in question. There were several conversations along this line between Livingston and Wallace and the officers of the bank. Livingston testified that during the negotiations the cashier of the bank furnished him by telephone a list of his

personal notes, seven in number, and making a total of $47,912.62. This included the note in question. Thereafter an agreement in writing was entered into, whereby it was agreed that Livingston should endeavor to procure an assignment from McCornick of all of his interest in the 80,000 shares of stock pledged to the Zion's Savings Bank & Trust Company for the benefit of plaintiff bank, and plaintiff bank agreed that when said assignment was made it would release to Livingston 1,420 shares, and to Wallace and Bennett, who were also creditors of Livingston, 510 shares of the stock of the Abraham Irrigation Company then held by the plaintiff bank as security for Livingston's indebtedness. In this agreement there is a recital that Livingston is "indebted to said bank in the sum aggregating $42,912.62 upon promissory notes." The figures quoted were written in ink, while the rest of the agreement was in typewriting. Livingston testified that when he executed the agreement the figures denoting his indebtedness were not contained in the writing, but that the space where the figures later appeared was blank. However, the agreement did not refer or relate to the subject of payment or application of payment, but merely provided for the release of certain collaterals upon the assignment of McCornick's interest in the stock referred to. In such case the reference to the amount of indebtedness was a mere recital and could not be conclusive upon the question of the agreement for payment and discharge which existed, if at all, independent of this writing. Thereafter the bank's attorney prepared a form of assignment for the transfer of McCornick's interest in the 80,000 shares of stock referred to, which Livingston procured McCornick to sign and deliver for the benefit of the plaintiff. Upon the question of what the parties agreed upon relating to what particular notes were to be paid by the transaction, Livingston testified that the plaintiff bank still had 25,849 shares of stock of U. S. Fuel Company previously pledged by him; that in his discussion with the bank's representatives he stated that the United States Fuel stock to be obtained from

McCornick, together with the stock of the same company already held by the bank, was to be used with which to pay his personal notes in the bank, seven in number, including the note sued upon. It was proved that McCornick's assignment was executed, and the stock transferred for the benefit of the plaintiff bank, and that the arrangement provided by the written agreement for the release of the stock in the irrigation company to Livingston and Wallace and Bennett was carried out. That left in the hands of the bank 105,849 shares of United States Fuel Company, which Livingston stated was to be in payment of the seven notes above referred to. Livingston stated that none of the notes were returned to him at the time and that he did not remember that he ever received them at all. No claim or demand for payment of the note sued upon was made upon either defendant by the bank from the time of the settlement until shortly before this action was commenced—a period af more than three years. Other details and circumstances were proved, but the above fairly exhibits the substance of defendants' evidence of payment.

The plaintiff offered evidence in contradiction of defendants' claim of payment, the general effect of which was that the total of 105,849 shares of United States Fuel stock was accepted in payment of the notes upon which Livingston was individually and solely liable, the total principal amount of which was $42,912.62. The parties are not in serious dispute about any feature of the transactions, except as to just what the agreement and understanding was respecting the particular notes to be paid. There are conflicts in the evidence upon this question and upon some circumstances bearing upon it, leaving the matter in the last analysis depending upon the credibility of the respective witnesses.

In considering the propriety of directing a verdict the trial court may not weigh the evidence. *Law* v. *Smith,* 34 Utah, 394, 98 P. 300. The test is whether or not there is some substantial evidence in support of the essential fact which the party is required to prove; and,

if the evidence and the inferences therefrom are of the character which would authorize reasonable men to arrive at different conclusions with respect to whether the fact was or was not proved, the question is one of fact and not of law. *Robinson* v. *Salt Lake City*, 37 Utah, 520, 109 P. 817. Tested by these rules, we conclude that the defendants' evidence of payment was sufficient to be submitted to the jury, and that the court erred in directing a verdict for the plaintiff, for which the judgment must be reversed.

As a new trial must be had, it is proper here to consider another question presented by appellant McCornick. The trial court sustained objections to McCornick's offer to prove that he delivered his assignment of the 80,000 shares of United States Fuel stock to Livingston upon condition that Livingston would deliver it to the plaintiff in payment of Livingston's personal obligations at the bank including the note sued upon, and upon which McCornick was also liable. It is not claimed that the plaintiff had knowledge or notice of this condition. In excluding the evidence we perceive no error. The only issue was payment. And whether or not the note in question was paid depends upon the contract between Livingston and the plaintiff, in the making of which McCornick did not participate at all. Assuming the excluded evidence to be true, it could not affect or control the agreement made by Livingston and the plaintiff as to what notes were to be discharged. Neither was the evidence admissible upon the theory that Livingston was the agent of the plaintiff in obtaining the assignment from McCornick. A debtor is not the creditor's agent in procuring security for the debt. *Campbell* v. *Murray*, 62 Ga. 86; *Helmes* v. *Wayne Agricultural Co.*, 73 Ind. 325, 38 Am. Rep. 147; *Wheeler* v. *Barr*, 7 Ind. App. 381, 34 N. E. 591; *Carter* v. *Goff*, 141 Mass. 123, 5 N. E. 471; *Hyatt* v. *Zion*, 102 Va. 909, 48 S. E. 1; *Woodward* v. *Bixby*, 68 N. H. 219, 44 A. 298.

The appellant McCornick urges the further question that, on account of the release by the bank of the shares of the stock in the irrigation company which had been pledged to secure the payment of Livingston's notes to the plaintiff, he, as an indorser, who was only secondarily liable, was thereby discharged from liability. Assuming, but not deciding, that such claim is available to appellant under the Negotiable Instruments Law, the plea must fail, because there was no showing whatever of the value of the securities surrendered. It appears that in consideration of the release of the irrigation stock Livingston supplied additional securities consisting of his interest in the 80,000 shares of United States Fuel stock. There was no attempt to prove, and it cannot be inferred from the evidence, that McCornick suffered any injury from the transaction. This plea, when otherwise made out, only goes to a discharge pro tanto to the extent of the impairment of the securities. *State Bank, etc.* v. *Michel*, 152 Wis. 88, 139 N. W. 748, 1131; *Citizens' Bank & T. Co.* v. *Knox*, 187 N. C. 565, 122 S. E. 304; *Interstate Trust & Banking Co.* v. *Young*, 135 La. 465, 65 So. 611; *Frazier* v. *First Nat. Bank*, 2 Ohio App. 159.

The judgment is reversed, and the cause remanded for a new trial; appellants to recover costs.

THURMAN and STRAUP, JJ., concur.

GIDEON, J., did not participate herein.

FRICK, J., died before announcement of decision.