## ELLERBECK v. CONTINENTAL CASUALTY CO.

No. 4114.    Decided July 8, 1924.    (227 Pac. 805.)

1. INSURANCE—GENERAL AGENT HAS AUTHORITY TO WAIVE PAYMENT ON DATE STIPULATED IN POLICY. A general agent of an insurance company has authority to waive payment of premium on date stipulated in policy, and to extend credit for payment of premiums due, regardless of any provision in policy to contrary.[1]

2. INSURANCE—SENDING OF STATEMENTS BY INSURER HELD NOT A RECOGNITION OF POLICY'S EXISTENCE AND WAIVER OF PAYMENT OF PREMIUM. Where insured permitted an accident policy to lapse by non-payment of premiums, mere sending of statements on the 1st of each month for two months after payment was due by in-

---

[1] *Loftis* v. *Mutual Ins. Co.*, 38 Utah, 532, 114 Pac. 134; *West* v. *Norwich Union Fire Ins. Soc.*, 10 Utah, 442, 37 Pac. 685.

surer was not such recognition of policy's existence and waiver of payment as to continue it in force an indefinite time after date of sending last statement.

3. TRIAL—WHEN COURT MAY DIRECT A VERDICT FOR DEFENDANT STATED. A court should not direct a verdict for defendant unless evidence is wholly lacking to prove some issue necessary to support plaintiff's claim, and unless no reasonable or logical inferences may be drawn by jury based upon evidence which would support plaintiff's claim.

4. INSURANCE—WHETHER CREDIT HAD BEEN EXTENDED TO INSURED FOR PAYMENT OF PREMIUMS HELD FOR JURY. In an action on an accident and health policy, whether credit had been extended to insured in payment of premiums which would constitute a waiver by insurer of the policy's provision as to time of payment of premium due *held* for jury.

5. INSURANCE—INSURED'S RIGHTS HELD TO HAVE BECOME FIXED BY TERMS OF POLICY ON PAYMENT OF PREMIUM. Under an accident and health policy, providing that insured, so long as policy was not canceled, might make annual payments to reinstate policy, so as to afford protection for accidents after date of payment, and sickness beginning ten days thereafter, insured's rights upon such payment became fixed by terms of policy.

Appeal from District Court, Third District, Salt Lake county *Wm. M. McCrea,* Judge.

Action by George E. Ellerbeck against the Continental Casualty Company. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Geo. H. Smith, R. B. Porter,* and *Dana T. Smith,* all of Salt Lake City, for appellant.

*Van Cott, Riter & Farnsworth,* of Salt Lake City, for respondent.

GIDEON, J.

This action was instituted upon a policy of accident and

532        SUPREME COURT OF UTAH        [July

Ellerbeck v. Cont. Cas. Co., 63 Utah 530

health insurance issued to plaintiff by the defendant company. Plaintiff had judgment. Motion for new trial was denied. Defendant appeals.

The complaint alleges that in October, 1920, defendant issued to plaintiff a certain accident and health insurance policy. A copy of the policy is attached to the complaint. It is alleged that the first yearly premium was paid by plaintiff and accepted by defendant; that prior to October 8, 1921, defendant issued a certificate renewing the policy for a period of one year to October 8, 1922; that thereafter the premium for such renewal was paid by plaintiff and accepted by defendant. It is further alleged that prior to October 8, 1922, defendant, through its agent, issued a certificate renewing the policy for a further period of one year; that thereafter the premium for such renewal was paid by plaintiff and accepted by defendant; that for the payment of each of said foregoing premiums the defendant and its agents extended credit to plaintiff, and that plaintiff paid said premiums pursuant to such extensions of credit. It is also alleged that plaintiff suffered bodily sickness and disease contracted on February 24, 1923. There are other allegations in the complaint not necessary to state here.

The answer admits the issuance of the policy, the payment and receipt of the premiums necessary to keep the insurance in force from October 8, 1920, to October 8, 1921, and from October 8, 1921, to October 8, 1922. As an affirmative defense it is alleged that the policy lapsed and was not in force after October 8, 1922; that on February 23, 1923, plaintiff attempted to have said policy reinstated; that the reinstatement, if any, was limited by certain provisions of the policy hereinafter appearing; that plaintiff became sick several days prior to February 23, 1923, and that, under the terms of the contract of insurance, the policy could not be reinstated to cover illness of plaintiff contracted prior to ten days after the reinstatement.

Plaintiff replied to the answer. Certain matters are alleged in the reply by which it is claimed defendant elected to and did waive the provisions of the policy referred to in the answer.

At the close of the testimony defendant moved for a directed verdict in its favor upon the following, among other, grounds: (a) That there is no evidence to support a finding that the policy was in force after October 8, 1922, and up to February 23, 1923; (b) that the evidence affirmatively shows that on February 23, 1923, the policy was reinstated and was in force and effect as to such accidental injuries as plaintiff might sustain after that date and as to any illness which might begin after ten days thereafter, and also that plaintiff was suffering from the illness which has since incapacitated him at the time payment was made upon the premium and the policy reinstated; (c) that there is no evidence of any estoppel; (d) that there is no evidence that defendant waived the provisions of the policy and continued the policy in effect so that the same would cover the illness of plaintiff; (e) that there is no evidence that any agent of the defendant company had authority to waive the terms of the policy; (f) that there is no evidence that at the time defendant accepted the premium on the policy defendant, or any of its agents, had any knowledge of the fact that plaintiff was suffering from the illness which caused his disability.

The motion was denied. This ruling of the court constitutes the principal error alleged and relied on for a reversal of the judgment.

On October 8, 1920, plaintiff was a dentist engaged in his profession at Salt Lake City. At that time Phil J. Purcell, under the name of the Continental Agency Company, was the general agent of defendant in soliciting and issuing accident and health insurance and in collecting premiums due due on such policies. He had power to name subagents. One R. W. Sloan was a duly appointed subagent, and he was doing business under the name of the Agency Company. Sloan secured plaintiff's application for the policy here in controversy. Under an arrangement made between plaintiff and Sloan the first annual premium was to be paid by plaintiff in professional services rendered to Sloan. The premium was paid to the Continental Agency Company by the Agency Company on December 16, 1920. Prior to October 8, 1921,

534          SUPREME COURT OF UTAH          [July

Ellerbeck v. Cont. Cas. Co., 63 Utah 530

the defendant, through its general agency at Salt Lake City, forwarded to plaintiff a renewal certificate, in which it was stated that the policy was renewed for a period of one year from October 8, 1921. It was, however, specifically provided in that renewal certificate that the same should become effective only upon the condition that the premium of $120 was paid by October 8, 1921. Mr. Sloan had notified Mr. Purcell of the arrangement made with plaintiff for the payment of the premium, and the premium was charged to the Agency Company on the books of the Continental Agency Company. The premium was paid by the Agency Company on November 17, 1921, and was paid to Mr. Sloan by plaintiff in the form of professional services, as in 1920. During September, 1922, a renewal certificate was sent to plaintiff through the mails by the Continental Agency Company continuing the policy in force from October 8, 1922, for one year. That renewal certificate contained the provision that it should become effective only upon the condition that the premium was paid before October 8, 1922. The premium was not paid. On October 1, November 1, and December 1 of that year the Continental Agency Company mailed plaintiff statements. It is testified to by witnesses on behalf of both plaintiff and defendant that these bills or statements were forwarded by the Continental Agency Company and received by plaintiff. It is quite conclusive that no other or subsequent statements were sent to plaintiff. On February 23, 1923, the daughter of plaintiff tendered to a clerk in the office of the Continental Agency Company a check for $60, and at the same time presented the bill sent plaintiff under date of December 1, 1922. The check was accepted and credited on the statement. Thereafter, on March 1st, a check for an additional $60 was mailed to the Continental Agency. The check was retained and a receipt returned to plaintiff. On February 24, 1923, plaintiff was taken to a hospital. It is admitted, and no contention is made to the contrary, that the sickness causing the disability began prior to February 24, 1923.

The court submitted to the jury: (a) Whether the de-

fendant had, by its acts and conduct, waived the provision of the policy requiring the payment to be made on October 8, 1922; (b) whether credit had been extended to plaintiff granting time in which to pay the premium, and whether defendant thereby waived such provision.

In its ninth instruction the court advised the jury that the renewal certificate dated October 8, 1922, and purporting to renew the policy for a period of one year, contained the provision, "This renewal is effective only upon the condition that a premium of $120 be paid on October 8, 1922;" that the insurance policy involved contained the provision, "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance;" also that the policy contained the provision, "If the policy lapses for nonpayment of the court defining waiver, the provisions of the renewal of premium, the health insurance can be reinstated only as provided in the third standard provision." The court then proceeded to instruct the jury that these provisions can be waived; that, if they should find by a preponderance of the evidence that they had been waived, under the instructions contract and of the policy quoted would constitute no defense to the action. The jury were also instructed that, if they should find from a preponderance of the evidence that defendant company or its authorized agents extended credit to plaintiff for the payment of the premium, and that the plaintiff, within the period of such credit, if any, accepted such extension of credit or paid the amount of the premium, such provisions of the renewal certificate and the policy would constitute no defense to the action.

By its tenth instruction the court enumerated the elements necessary to be proved in order to establish waiver.

The court's fifteenth instruction is as follows:

"You are instructed that the delivery to the plaintiff of the renewal certificate dated October 8, 1922, did not continue the insurance in force and effect beyond that date for the reason that the

said renewal certificate was made conditional upon the payment of the premium on or before October 8, 1922, and the said premium was not paid by the plaintiff on or before said date, unless you shall find that the payment of the premium on or before said date was waived by defendant or that credit was extended beyond said date within which the premium might be paid."

In its sixteenth instruction the court advised the jury that the payment of the premium on February 23d did not constitute a reinstatement of the policy so that it covered illness suffered between October 8, 1922, and February 23, 1923, "unless you shall find from a preponderance of the evidence that credit was extended and that said payment was accepted under such circumstances as, together with all the facts and circumstances in evidence, constituted a waiver of the provisions of the policy in this regard, and an acceptance of the same as payment of the original premium within the period of such extended credit."

In its eighteenth instruction the court calls the attention of the jury to the provision of the policy that "no change in this policy shall be valid unless approved by an executive officer of the company and such approval be indorsed hereon"; also to the provision in the application for the policy that "the agents and solicitors of this company are not authorized to extend credit or waive, extend or change any of the terms, conditions or provisions printed herein." The jury were also advised in that instruction that these provisions were binding on the plaintiff unless they should find that they had been waived by defendant.

That a general agent, such as the Continental Agency Company mentioned in this record, has authority to waive payment on the dates stipulated in the policy and to extend credit for the payment of premiums due, regardless of any provision written in the policy to the contrary, has been determined by this court in *Loftis* v. *Mutual Ins. Co.*, 38 Utah, 532, 114 Pac. 134. The views expressed in that opinion are supported by the great weight of authority.

In discussing the powers of agents in an insurance case the

Appellate Court of Indiana in *West* v. *National Casualty Co.*, 61 Ind. App. 493, 112 N. E. at page 120, says:

"From the application of the general rule of agency first above announced to the respective facts of each of the decided cases cited and quoted from above it would seem to follow, by an analogy of reasoning, that, where an agent of an insurance company, as in the present case, has the power to accept monthly premiums and issue renewal receipts, thereby, in effect, extending or renewing the policy of insurance for the period covered by the renewal receipt, such power necessarily implies and carries with it authority on the part of such agent to extend the time of the payment of such renewal premiums. *Ætna Life Ins. Co.* v. *Fallow*, 110 Tenn. 720, 77 S. W. 937; *Dromgold* v. *Royal Neighbors, etc.*, 261 Ill. 60, 103 N. E. 584."

On the same subject the Supreme Court of the United States in *Insurance Co.* v. *Wolff*, 95 U. S. at page 329 (24 L. Ed. 387) says:

"The conditions mentioned in the policy could, of course, be waived by the company, either before or after they were broken; they were inserted for its benefit, and it depended upon its pleasure whether they should be enforced. The difficulty in this case, and in nearly all cases where a waiver is alleged in the absence of written proof of the fact, arises from a consideration of the effect to be given to the acts of agents of the company in their dealings with the assured. Of course, such agents, if they bind the company, must have authority to waive a compliance with the conditions upon a breach of which the forfeiture is claimed, or to waive the forfeiture when incurred or their acts waiving such compliance or forfeiture must be subsequently approved by the company. The law of agency is the same, whether it be applied to the act of an agent undertaking to continue a policy of insurance, or to any other act for which his principal is sought to be held responsible.

"The principle that no one shall be permitted to deny that he intended the natural consequences of his acts when he has induced others to rely upon them is as applicable to insurance companies as it is to individuals, and will serve to solve the difficulty mentioned. This principle is one of sound morals * * * and its enforcement tends to uphold good faith and fair dealing."

See, also, *Insurance Co.* v. *Wilkinson*, 13 Wall. 222, 20 L. Ed. 617; *West* v. *Norwich Union Fire Ins. Soc.*, 10 Utah, 442, 37 Pac. 685.

It seems to be the theory of plaintiff that receiving the premium after the dates upon which they were due in the

years 1920 and 1921 had established a custom or method of doing business that in effect was a waiver of defendant's right to insist upon a literal application of the provisions of the policy quoted in the instructions of the court. There are two reasons why this theory is not tenable: (1) It is not shown that defendant ever extended credit to plaintiff in those years or agreed to any extension of time in which to make payment. On the contrary, it is the proof of the general agent that the premiums were charged on the books of the general agent to the Agency Company and not to plaintiff, the Agency Company being a duly appointed subagent. (2) Even though a credit had been extended to plaintiff, it would not be binding upon defendant in subsequent years after demand for payment had been made and payment not made.

It is admitted that the statements for the premium due were mailed to plaintiff and were received by him on November 1st and on December 1st. The sending of these statements constituted in legal effect, and in fact was, a demand for payment. Conceding, however (without so holding), that mailing the statements to plaintiff on November 1st and December 1st was a recognition on the part of defendant that the insurance was still in force and that defendant had waived its right or would be estopped to insist that the policy had lapsed by failure to pay on October 8th, nevertheless that could not avail plaintiff for an indefinite time. It appears without serious controversy that no statements were sent to plaintiff after December 1st. Payment was not made until February 23d. It cannot be reasonably contended that the mere sending of statements on the 1st of each month for two months after the payment was due was such a recognition of the existence of the insurance and waiver of payment that the policy remained in force an an indefinite time after the date of sending the last statement. This claim or contention of the plaintiff lacks support in the evidence.

It becomes necessary, therefore, to examine into the record and determine whether there is any evidence which au-

thorized the trial court to submit to the jury the question as to whether credit had been extended to plaintiff, which credit would constitute a waiver by the defendant of the provision of the policy as to the time of payment of the premium due. The issuance and delivery of the renewal certificate was in legal effect an offer on the part of defendant to extend the policy for a period of one year. To become binding upon both the insured and insurer the offer must have been accepted by plaintiff either by express agreement or by acceptance inferable from statements or acts of the parties. *Pacific Mutual Life Ins. Co.* v. *Vogel*, 232 Fed. 337, 146 C. C. A. 385. Both the plaintiff and a Mr. Bennett, a witness for defendant, testified to a conversation had over the telephone with respect to the premium due on this policy. The date of that conversation is not definitely fixed by either witness, but it fairly appears that it was prior to December 8, 1922. The testimony of the witness Bennett is that he called the plaintiff over the telephone under instructions from Mr. Purcell, president of the Continental Agency Company. The testimony of the plaintiff is to the effect that he did not know who it was that called him by telephone, but that it was some one from the office of the Continental Agency Company. On cross-examination respecting that conversation the plaintiff testified:

"Q. What did he say, rather? A. He said that they wanted to know, the insurance company wanted to know, if I intended to keep the policy; otherwise they would have to cancel it; asked me, said he wanted to know if I intended to keep it. Q. And what did you reply, Doctor? A. I replied that I did. That is not my complete reply. Q. All right? A. Would you like it all? Q. Yes, Doctor; please? A. I told him that I wouldn't keep a policy on my desk for two or three months and then not pay for it. Q. And is that all, Doctor? Is that the extent of the conversation? A. No. There was some more. Well, he said he— let's see—oh, he says, well, they had to know about the policy and whether I intended to keep it or not, and if not they were going to cancel it. I says, 'Now, don't cancel it unless I tell you to; and with that he gave me some kind of an affirmative as though that were satisfactory to them. Q. Is that all right, or something of that sort? A. There wasn't very much to this conversation—just

three or four sentences on the part of both of us. He seemed to be perfectly agreeable to getting my consent to keep it."

After that conversation no further demand or request was made upon the plaintiff to pay the premium due. On February 23, 1923, a partial payment of $60 was made on the premium, and the same was accepted as hereinbefore stated. Nothing was communicated to plaintiff by defendant indicating that the policy had lapsed or was not in force either at or after the time of the telephone conversation outlined above.

Can or should a court hold, as matter of law, that reasonable men might not understand or infer from the language used in that telephone conversation that plaintiff had not accepted the defendant's offer to continue the insurance in force when delivery was made of the renewal certificate and had thereby bound himself to pay the premium? A court should not direct a verdict in favor of a defendant unless the evidence is wholly lacking to prove some issue necessary to support the plaintiff's claim and unless no reasonable or logical inferences may be drawn by the jury based upon the evidence which would support the plaintiff's claim. That general rule has so often been stated by this and other courts that it may be said to have become elementary. Counsel for appellant do not dispute the law to be as thus stated. They insist, however, that the evidence is wholly lacking to establish any facts from which it can be reasonably inferred that the defendant company waived the provision of the policy set out in the instructions of the trial court. In the conversation quoted the plaintiff stated that he intended to keep the policy; that he would not keep a policy on his desk for two or three months and then not pay for it; and added "Now, don't cancel it [the policy] unless I tell you to." It appears that the reply of the representative of defendant led plaintiff to understand that it was agreeable with the company that the insurance should remain in force. This testimony, in our judgment, reasonably raises an issue as to whether the payment made was in compliance with the credit understanding or whether

it was made under the right given to the insured under the provisions of the policy quoted in the court's ninth instruction. Such being the fact, it was the right and duty of the court to submit that question to the jury.

By the terms of the policy the plaintiff, so long as the policy was not canceled, had the right to make the annual payments to reinstate the policy so as to afford protection for accidents after the date of payment and sickness beginning ten days thereafter. It is therefore contended by counsel for defendant that, even though a waiver of payment was made by the defendant, or an extension of credit given, such credit would not keep the policy in force between the date of payment as fixed in the policy and the date of actual payment. The courts usually do not concur in that construction of similar provisions in insurance policies. As stated, the insured had a legal right to reinstate his policy by making the annual payment as stipulated in the policy. His rights upon such payment are fixed by the terms or provisions of the policy. Under the construction of the provision contended for by defendant's counsel, there would be nothing gained for plaintiff in this case by either a waiver or an extension of credit. The Circuit Court of Appeals, Third Circuit in *Connecticut Gen. Life Ins. Co.* v. *Mullen,* 197 Fed. 299, at page 301, 118 C. C. A. 345, 347 (43 L. R. A. [N. S.] 725), in discussing a similar provision in an insurance policy, said:

"It would indeed be a violent construction of the contract between the parties to hold that the giving of the credit for 60 days for the payment of the first premium merely postponed to the end of that period the time when the policy should go into effect. In other words, that the payment of the first premium, while the applicant was still in his original health, was merely postponed for 60 days, but was still a condition precedent to any obligation on the part of the defendant company. What motive could the applicant have in making such a contract? The credit given would be useless to him, and yet the defendant company would hold the applicant bound to pay the first premium at the end of 60 days, on a tender of the policy."

Rulings of the court with respect to the admission of certain testimony objected to by defendant are assigned as er-

ror. We find nothing in these assignments calling for special comment. Even though some of the testimony may have been objectionable, the rulings in no way prejudiced the defendant in any of its rights.

The issues made by defendant in its answer and upon which there was testimony were fairly submitted to the jury by the court in its instructions as given.

We find no reversible error in the record. The judgment is therefore affirmed, with costs.

WEBER, C. J., and THURMAN, CHERRY, and FRICK, JJ., concur.