EMPLOYERS' MUT. LIABILITY INS. CO.
OF WISCONSIN v. ALLEN OIL CO.
DASTRUP et ux v. ALLEN OIL CO.

Nos. 7733, 7734.   Decided June 15 1953.   (258 P. 2d 445.)

See 32 C. J. S., Evidence, sec. 529. Explosion resulting from negligence in delivery of petroleum products. 24 Am. Jur., Gas and Oil, sec. 129; 151 A. L. R. 1261.

*Wilson & Wilson,* Ogden, for appellants.

*John D. Rice,* Salt Lake City, *Dallas H. Young,* Provo, for respondents.

WOLFE, Chief Justice.

These are appeals of two actions arising out of the same circumstances. Both actions were tried together and they have been consolidated for the purpose of appeal. In case No. 7734, the appellants, LaForge Dastrup and Flora Dastrup, his wife, sought damages for the loss of their store and gasoline station at Altamont, Duchesne County, Utah,

resulting from an explosion and fire occurring while the respondent Kenneth Thoresen, an employee of the respondent Allen Oil Company, was making a tanker delivery of gasoline to the Dastrup station. One Dean Cox, a customer at the station, sustained personal injuries from the explosion and the pick-up truck which he was driving, owned by his employer, the Moon Lake Electric Association, was extensively damaged by the fire. Case No. 7733 is an action by the Employers Mutual Liability Insurance Company of Wisconsin, insurer of the truck and carrier of workmen's compensation insurance on Cox, to recover, as a subrogee, amounts paid by it to the Moon Lake Electric Association and Cox under the policies of insurance. At the trial a jury returned a verdict of "no cause of action" in both cases and from judgments entered on those verdicts in favor of the respondents, these appeals are brought.

On August 23, 1946, a clear hot day, Thoresen drove a loaded gasoline tanker from Salt Lake City to Altamont, a distance of about 160 miles, where he delivered his load at the Dastrup station. The Dastrups had on previous occasions purchased gasoline from the Allen Oil Company and there was testimony that Thoresen had made one of those prior deliveries. The station consisted of three gasoline pumps erected on a cement island with drive strips on either side of the pumps. The island set in front of a store building which faced south in which the Dastrups carried on a retail trade in groceries, confections, automobile accessories, etc. Three tanks in which gasoline was stored lay directly beneath the north drive strip (running between the island and the front of the store.) This drive strip was a concrete slab, 16x18 feet and ranging from 12 to 24 inches in thickness. The three tanks rested off the ground on cement cradles in an underground room or chamber, 16x18x10 feet, unfilled with dirt. The walls of the chamber were constructed of cement. From each tank ran an outlet pipe up into the corresponding gasoline pump through which gasoline was pumped out of the tanks. Vent pipes also led

out of the tanks to the outside to allow the escape of air and vapor. The tanks were filled through intake pipes running from the island down into the tanks. Adjoining the underground room in which the tanks were situated was a smaller room in which an electric air compressor was housed. The compressor motor turned on and off automatically. This small room lay directly beneath the front part of the store building. The two rooms were closed off from each other by a heavy wooden refrigerator door.

On the day in question Thoresen arrived at the Dastrup station between two and two-thirty o'clock in the afternoon and drove onto the south drive strip (between the island and the highway). On arrival, the contents of the center and west tanks were measured to ascertain how much gasoline would be required to fill them. The east tank had just been installed and was known to be empty. After cautioning Thoresen not to overflow the center tank, Mrs. Dastrup left Thoresen, who was in the process of filling the east tank with white gasoline, and went into the store. Mr. Dastrup was in the hospital at that time and Mrs. Dastrup was operating the station and store with the aid of their 13-year old son, Neal. After emptying all the white gasoline in the tanker into the east tank, Thoresen commenced filling the center tank with bronze gasoline. What happened thereafter is in conflict. According to Thoresen, he knew from the measurements that had been taken that the center tank would not hold his entire load of bronze and hence he watched closely to determine when the center tank was full; that when that tank was full he commenced filling the west tank with the remaining bronze gasoline in the tanker, spilling only about a quart of gasoline on the ground in making the change-over from the center to the west tank; that about this time Dean Cox drove up in his employer's pick-up truck onto the north drive strip (between the island and the store) and began filling the truck with gasoline from the west pump; that because he (Thoresen) knew the west tank would hold all the remaining

gasoline in the tanker, he went into the store where he made out and had Mrs. Dastrup sign an invoice for the load; that he then returned to the tanker, determined that it was empty, proceeded to put the fill-hose which he had been using to fill the tanks back in a rack on the tanker, and to close the outlet valves on the tanker and cover them with safety caps, when he heard a hissing noise behind him; that the cement slab forming the north drive strip broke up into pieces, one of which hit him in the back, and he was swept under the tanker by the explosion.

According to Neal Dastrup, who was sitting on the tanker while the center tank was being filled, Thoresen went into the store and allowed that tank to run over, spilling a large quantity of gasoline on the ground; that he called to Thoresen who came running out of the store and turned the outlet valve on the tanker off; that he (Neal) then went into the store and had been there for about two and one-half minutes when the explosion occurred.

Cox was thrown by the explosion onto the top of the tanker and struck by a piece of flying concrete. The pickup truck was overturned and caught fire. Thoresen was able to move the tanker away without it being damaged. The store building caught fire and was destroyed with all its stock and inventory.

Mr. Dastrup returned to his home in Altamont from the hospital the following day. Upon inspection of the burned premises he found that the center gasoline storage tank had ruptured and was black inside from fire which had consumed its contents. In the intake pipe to that tank he found the nozzle from the fill-hose used by Thoresen to fill the tank and on the ground near the island he found the coupling which fitted onto the other end of the fill-hose where it was connected onto the outlet valve on the tanker. A wrench used to turn the tanker outlet valves on and off was also found on the ground. Mr. Dastrup testified that he had gone into the underground chamber about two

weeks before the explosion occurred for the purpose of checking the tanks for leaks, but had found none.

At the trial it was the contention of the appellants (plaintiffs below) that the explosion and the fire resulted from the ignition of an explosive medium of air and gasoline vapor by a spark; that the explosive medium was produced by the spilling of gasoline on the hot pavement around the pumps and island; that the spark was engendered by Thoresen in either inserting the nozzle of the fill-hose into an intake pipe, by dropping a wrench or hose coupling onto the graveled surface, by static electricity discharging from the tanker, by Thoresen walking on the pavement or gravel, or by some other act of Thoresen. The respondents (defendants below) contended that the Dastrups were negligent in housing their gasoline storage tanks in an unfilled chamber; that through leaks in the tanks or by drippings from the pumps an explosive medium was created in the chamber which permeated into the adjoining compressor room and that the medium was ignited by a spark produced when the compressor motor turned on.

As error, the appellants have first assigned the trial court's action in allowing one V. C. Langford, an expert witness called by the respondents, to testify that the Dastrup's gasoline storage facilities did not comply with safe practices in the oil industry. It is urged that the witness invaded the province of the jury by expressing an opinion on an ultimate fact. Assuming without deciding, the correctness of the appellants' assumption that an expert witness may not express an opinion on an ultimate fact to be determined by the jury, the question asked Langford was not ultimate. The ultimate question on this subject was whether the Dastrups were negligent in the manner in which they stored their gasoline. This is quite different from the question asked Langford and which he was allowed to answer, viz., whether the setup at the Dastrup station complied with "safe practices in the oil industry." Failure to comply with the generally recognized safe practices in an industry

is only evidence to be weighed with other factors in determining negligence.

Be that as it may, there was no error in allowing the witness to so testify. In *Hayes* v. *Southern Pacific Co.*, 17 Utah 99, 53 P. 1001, 1002, action was brought by a railroad employee to recover damages for injuries sustained by him when he was struck by the beam of an engine ■ which had pulled into a coal shed where he worked. The plaintiff claimed that the railroad was negligent in its construction of the shed. This court held it proper for an expert witness called by the railroad to answer the following question:

"From your experience as a railroad engineer and your experience as a civil engineer, please state whether those sheds were carefully and properly built for the purposes for which they were erected"?

The plaintiff claimed that the question called for the opinion of the witness on a question that the jury was to determine and was therefore improper. Said the court:

"The general rule is that a witness must testify to facts, and not conclusions. To this rule, however, there are exceptions, and we think this question falls within the exceptions. The contention of the appellant at the trial was that the coal sheds were negligently constructed. This was controverted by the respondent, and thus one of the main issues was whether they were properly erected for the purpose for which they were intended. Now, it is apparent from the evidence that these sheds are peculiar and more or less complicated structures,— results of mechanical skill,—and appear to be necessary for, and used exclusively in, the business of railroading. Thus, the very nature and use of the structure precludes the idea that the average layman is competent to judge of their proper or improper construction. It was therefore permissible to resort to the opinion of a person possessed of such requisite mechanic skill and experience as enabled him to form a correct judgment as to whether or not the sheds were carefully and properly constructed. The building of such sheds for the purpose of railroading is not a subject of general knowledge, but it depends so far upon skill in and knowledge of the mechanic arts, outside the knowledge and experience of ordinary jurors, as to render the opinions of those who are competent, from special training in the art of construction, and experience, to form them, admissible. This is so because of the difficulty in placing before jurors unskilled in such

matters a state of facts which would enable them to draw correct conclusions without the aid of such opinions."

The question asked the witness in that case concerning the proper construction of railroad coal sheds is analogous to the question propounded to Langford in the instant case regarding generally recognized safe practices in the oil industry. What we said there concerning the need of expert opinion to aid the jury to form an intelligent opinion on matters which they would otherwise be incompetent to judge, applies with equal force in this case.

It is next urged by the appellants that the trial court erred in excluding from evidence certain testimony of O. C. Allen, president of the respondent Allen Oil Company at the date of the explosion. Mr. Allen was called as a rebuttal witness by the appellants and would have testified, according to the appellants' offer of proof, that prior to the date of the explosion he learned of the installation of the gasoline tanks in the unfilled underground chamber at the Dastrup station. Appellants contend that with this fact known to the president of the Oil Company, it was negligent for that company through its servant, Thoresen, to permit the center gasoline tank to overflow on the hot concrete surface, thereby forming an explosive medium around the pumps, and after having done so, to fail to take precautions to avoid the creation of a spark which would ignite the inflammable medium around the pumps which would spread to the underground storage chamber. The record with respect to the exclusion of the testimony in question of Mr. Allen is as follows:

"Q. [Propounded by counsel for the appellants] Mr. Allen, directing your attention to the fact that on the LaForge Dastrup premises in Altamont there were certain tanks, gasoline storage tanks, installed in an underground, unfilled chamber. Did you know of that condition on and prior to August 23, 1946?

"Mr. Rice [counsel for Allen Oil Co.]: Just a minute.

"Mr. Young [counsel for Thoresen]: On behalf of the defendant Thoresen we object to that.

"The Court: On what ground?

"Mr. Young: On the ground it is immaterial and incompetent— any knowledge upon him can't be binding upon this defendant as an individual. They're suing this man as an individual, your Honor.

"The Court: I wonder if this question of knowledge has anything to do with what we have before us.

"Mr. Rice: I object to it on the ground that it is immaterial and irrelevant, your Honor.

"(argument)

"The Court: The objection will be sustained."

In his memorandum denying the appellants' motion for a new trial, the trial judge justifies his ruling on the ground that the proferred testimony should have been introduced as a part of the appellants' case-in-chief and was not properly rebuttal testimony. Counsel for the appellants attack this ground relied upon by the trial court because the record reveals that neither Mr. Rice, counsel for the Allen Oil Co., nor the court had in mind that the proferred testimony was out of order, but that it was immaterial and irrelevant, and had he known that such was the basis of the court's ruling, he would have moved to re-open his case-in-chief. The trial court counters this argument with the statement in his memorandum that he would not have granted a motion to reopen had it been made, at that stage of the trial.

Aside from these considerations, we conclude that no prejudicial error was committed in excluding from evidence the proffered testimony of Mr. Allen. As shown by the excerpt from the record set out above, Mr. Young, counsel for Thoresen, objected to the question on the ground that any knowledge of Mr. Allen concerning the manner in which the tanks were installed could not be imputed to Thoresen, who was a co-defendant with the Allen Oil Company. This objection was well taken because knowledge of a master is not imputed to his servant when the servant is being sued personally. Had the court

allowed the testimony of Allen in evidence against Thoresen, error would have been committed as to Thoresen. Assuming that the proffered testimony was admissible against the Allen Oil Co., no prejudicial error could have resulted in excluding it from evidence. It must be remembered that it was the Dastrups who installed and maintained their tanks in an unfilled chamber. If because of this manner of installation, special precautions which otherwise would not have been necessary, should have been observed by the Allen Oil Co. to constitute due care on its part, the Dastrups cannot avail themselves of its failure to do so. If the Oil Company knowing the manner of the installation, was negligent in failing to take added precautions in filling the tanks, the Dastrups were equally negligent in installing and maintaining the tanks in such a manner that such added precautions were necessary. The plaintiff Insurance Company, of course, had no part in installing the tanks and had counsel offered the testimony only on behalf of the Insurance Company against the Allen Oil Company, we think it should have been admitted. Not having so limited his offer, there was no error in sustaining an objection to it.

Turning now to a consideration of errors alleged to have been committed in instructing the jury, appellants complain that it was error to charge the jury in instruction No. 19 that even though they found the respondents negligent in spilling gasoline on the Dastrup premises, the appellants could not recover unless the jury also found that the spilled gasoline was ignited by some further act of negligence on the part of the respondents or by natural causes. It is claimed by the appellants that a person negligently spilling gasoline should reasonably foresee that it might be ignited by some act of a third party and if such occurs, the person spilling the gasoline would be liable for the ensuing damage. In the instant case there was evidence that a spark capable of igniting the vapors from the spilled gasoline could have been produced by Cox or Neal Dastrup in scuffing their

shoes on the concrete and graveled surface, or that a spark could have been emitted from the motor on the pump which Cox turned on to fill the gasoline tank on this truck. Therefore as to each plaintiff in the case (Dastrups and the Insurance Company) there was evidence that the act of a third party — not the act of the respondents — might have created the spark which ignited the gasoline vapors.

The appellants' objection in the trial court to instruction No. 19 was couched in general terms, viz.

"on the grounds and for the reasons that such instruction is not supported by, and is contrary to, the law and the evidence. That it is misleading, and can only serve to confuse the jury."

The objection failed to comply with the require-  3, 5 ments of Rule 51 Utah Rules of Civil Procedure, that

"In objecting to the giving of an instruction, a party must state distinctly the matter to which he objects and the grounds of his objection."

One of the purposes in requiring counsel to make objections to instructions in the trial court is to bring to the attention of the court all claimed errors in the instructions and to give him an opportunity to correct them if he deems it proper. The objection should be specific enough to give the trial court notice of the very error in the instruction which is complained of on appeal. But an objection that an instruction is "not supported by, and is contrary to, the law" lacks specificness and does not direct the court's attention to anything in particular. A proper objection to instruction No. 19 which would have called the court's attention to the error raised on this appeal would have been "That it does not correctly state the limits or extent of the respondents' legal liability." No objection having been made which pointed out with any degree of particularity wherein instruction was not supported by the law, we will not here consider the instruction on its merits. However, any error in instruction No. 19 as to the limits of the respondents'

legal liability was corrected as to the Dastrups in instruction No. 22. That instruction charged the jury that if any person other than the respondents were negligent and his negligence was a proximate cause of the explosion, they could not find in favor of the Dastrups and against the respondents unless they also found that the respondents were negligent and that their negligence combined with the negligence of the other person to produce the damage.

Appellants complain of instruction No. 23 advising the jury that they could not return a verdict in favor of the Employers Mutual Liability Insurance Company if they found that Cox was negligent in any respect and that such negligence proximately contributed to cause the accident. An objection was made to this instruction on the ground that there was no evidence of any negligence on the part of Cox. Assuming the objection to be well taken, no prejudicial error was committed because the court had already submitted to the jury in instruction No. 9 the question of contributory negligence on the part of Cox. No objection was taken to the submission of that question in instruction No. 9.

There was no error in the court's refusal to give the appellants' requested instruction No. 7 to the jury. This proposed instruction read:

"If you find that the plaintiffs Dastrup constructed and maintained their premises in such a manner as to constitute a fire hazard such fact or facts may or may not constitute contributory negligence. *There is no evidence that any act of the plaintiffs in this case was unlawful* and the law allows a person to make any lawful use of his property he deems best. Furthermore the law does not require a person to anticipate the negligent acts of another." (Italics added.)

It would have been misleading to have instructed the jury that there was no evidence of any "unlawful act" by the appellants. It is true that there was no evidence of any violation by the appellants of any state statute or city or county ordinance. But the requested instruction did not

state that. It encompassed all acts which might be termed 'unlawful." A lay jury might well think of contributory negligence as an "unlawful act" since it prevents recovery by a plaintiff. Since the instruction might have well confused the jury on the question of contributory negligence, the trial court exercised good judgment in refusing to give the instruction.

We have examined other matters assigned as error in the instructions, but we find them without merit. The judgment below is affirmed. Costs to respondents.

McDONOUGH, J., concurs.

CROCKETT, J., concurs in the opinion of WOLFE, C. J., and also in the views expressed by WADE, J., with regard to opinion evidence.

HENRIOD, J., concurs in the result.

WADE, Justice (concurring in the result).

I agree that the court properly allowed expert testimony that Dastrup's storage facilities did not comply with standard safety practices in the oil industry, not because that is not an ultimate fact, for I think that makes no difference, but because such evidence would tend to aid the jury in arriving at the truth. The so-called rule that opinion evidence is not admissible on ultimate facts even though it would aid in ascertaining the truth because it invades the province of the jury is a spurious doctrine and should be completely discarded.[1]

"The purpose of a trial is to investigate the facts so as to ascertain the truth, and the modern tendency is to regard it as more important to get to the truth of the matter than to quibble over distinctions * * * a witness may be permitted to state a fact known to him

[1] See my dissenting opinion on this question in *Jiminez* v. *O'Brien*, 117 Utah 82, 213 P. 2d 337, and the authorities cited and quoted therein; also my concurring opinion in *Hooper* v. *General Motors Corp.*, 123 Utah 515, 260 P. 2d 549.

because of his expert knowledge, even though his statement  *  *  * may involve the ultimate fact to be determined by the jury."[2]

I think it unfortunate that the prevailing opinion should dodge the real question presented and sustain the trial court on the ground that the question is not ultimate, for the only sound reason this evidence is admissible is because it tends to aid the jury in determining the truth. Whether it is the ultimate question or an evidentiary one is immaterial for it is more important for the jury to arrive at the truth on ultimate questions than on mere evidentiary ones from which the ultimate questions might be inferred, for the ultimate questions are determinative of the case whereas other questions may not be.

It is not dicta to hold as above indicated. Certainly the court may choose the most logical ground on which to base its decision where there is more than one theory which will support its conclusions.

As to the rest of the points discussed in the prevailing opinion I concur for the reason that I find no prejudicial error. Although I believe that several of the court's rulings were erroneous, and the grounds for sustaining the court in the prevailing opinion are technical rather than substantial, I think no prejudicial error was committed.

---

[2]*Cropper* v. *Titanium Pigment Co.*, 8 Cir., 47 F. 2d 1038, 1043, 78 A. L. R. 737 at page 745.