Santos CRUZ, Plaintiff and Appellant,

v.

Val MONTOYA, Mike Montoya, et al., Defendants and Respondents.

Santos CRUZ, Plaintiff and Respondent,

v.

Val MONTOYA, et al., Defendants and Appellants.

Nos. 17670, 17646.

Supreme Court of Utah.

March 15, 1983.

Brian M. Barnard, Salt Lake City, for Santos Cruz.

David Paul White, Salt Lake City, for Val Montoya.

Mike Montoya, pro se.

HOWE, Justice:

This review combines two separate appeals from the same judgment. In case No. 17670 one of the defendants, Val Montoya (Val), seeks a new trial on the ground that excessive damages were awarded against him, that the trial court failed to give certain jury instructions, and that his trial attorney inadequately represented him. In case No. 17646 the plaintiff, Santos Cruz (Santos), seeks a reversal of the trial court's directed verdict in favor of another defendant, Mike Montoya (Mike), and a remand for a new trial.

These cases arise from an incident in a Salt Lake City cafe where Santos sustained personal injuries as the result of a fight with the Montoyas. The facts were disputed at trial and the evidence was conflicting. However, on appeal the evidence is viewed in a light which is consistent with the jury verdict. *Ostertag v. La Mont*, 9 Utah 2d 130, 339 P.2d 1022 (1959).

Santos and his girlfriend, Darla (now his wife), entered the cafe late in the evening and sat a few tables away from Val, Mike, Joe and David Montoya who were already seated. The latter group had come from a bar where they had been drinking and playing darts in league competition. A comment from someone at the Montoya table directed at Darla precipitated an exchange of words between Santos and the Montoyas. Santos stood up and one of the Montoyas knocked him down. Darla and Santos identified the assailant as Joe Montoya while Val and Mike testified that he was David "Monty" Montoya. Darla testified that at this point all of the Montoyas joined in the beating—hitting and kicking Santos who was on the floor covering his head to protect himself, unable to fight back. A waitress saw one of the Montoyas grab Santos but did not see more since another of the Montoyas blocked her view.

Moments after this initial altercation had subsided and the Montoyas were walking away from Santos, he wiped blood from his lip and directed a comment at the Montoyas about the four on one odds of the fight. Darla made a similar comment. Val responded verbally and went back to Santos and struck him. Again, other Montoyas followed, kicking and hitting him and, in Santos' words, with "more anger" than the first time. This beating lasted a few minutes longer than the first one which was only a couple of minutes. In this altercation Val kneed Santos in the ribs, hit him in the head and kicked him. Santos also had a patch of hair pulled from his head; but, he did not know which of the Montoyas had held him down by the hair while the others had continued the beating. He was also kicked in the face. The owner of the cafe saw at least three of the Montoyas involved in the fight but could not identify who did what because they were all big men (weighing around 250 pounds each) who were similar in appearance.

None of the witnesses for Santos testified that Mike was involved in the second altercation. Santos testified that all of the other Montoyas participated. Mike testified that he had attempted to break up the fight.

Val claimed no involvement in the first altercation. He explained his involvement in the second fight as self defense against Santos who, upon recognizing Val as an

off-duty police officer, made a derogatory statement and came toward him in a threatening manner. On cross-examination Val testified further that although he had been trained in methods to subdue assailants, he continued to hit Santos anywhere he could once he was on top of him because Santos was hitting him.

The fracas subsided and all of the Montoyas left the cafe before the police arrived. Santos sustained personal injuries including teeth knocked loose, hair pulled from his scalp, and his face and lip beaten so that they remained swollen for a time. Additionally his legs, back and ribs had been battered and his entire body ached. He lost days from his job, sought medical and dental care, and at the time of trial testified that he was still somewhat limited from engaging in sporting and other activities in which he had formerly participated.

The jury awarded a verdict against Val in the sum of $9,000 general damages, $579.89 special damages and $12,000 punitive damages. The trial court directed a verdict in favor of Mike because Santos had failed to prove a prima facie case against him. The other defendants were not present at the trial; however, jurisdiction of Joe was obtained and the court entered judgment of $1,000 general damages, $869.80 special damages and $1,000 punitive damages against him jointly and severally with the award against Val. Joe has not appealed.

## DAMAGES

Juries are generally allowed wide discretion in the assessment of damages. *Amoss v. Broadbent,* 30 Utah 2d 165, 514 P.2d 1284 (1973). Where personal injuries involve a loss of employment, personal inconvenience, and pain and suffering, there is no set formula to compute the amount of damages. *Jorgensen v. Gonzales,* 14 Utah 2d 330, 383 P.2d 934 (1963). We stated in a slander suit which awarded compensatory and punitive damages:

[W]hen physical injury is involved, courts have no hesitancy in allowing and approving substantial awards as general damages which include pain and suffering. The pain and suffering inflicted upon the mind and the emotions by such wrongful act of another is no less real; and should be no less entitled to be compensated for.

*Prince v. Peterson,* Utah, 538 P.2d 1325, 1329 (1975). This Court defers to the jury determination unless a verdict is "so excessive as to be shocking to one's conscience and to clearly indicate passion, prejudice or corruption on the part of the jury." *McAfee v. Ogden Union Ry. & Depot Co.,* 62 Utah 115, 129, 218 P. 98, 104 (1923).

The award of compensatory damages in this case neither shocks the conscience of this Court nor clearly indicates passion, prejudice or corruption by the jury. Santos not only suffered lost wages and medical and dental expenses which were compensated in the award of $579.89 special damages against Val (or $869.80 against Joe), but he also underwent the pain and suffering of a bruised and battered body and head as well as puffed and bleeding lips and the loss of a patch of hair from his scalp. The fact that the injuries were not more severe makes the pain and suffering no less real. Santos' bruises took a month to heal; his hair did not grow back for several months; he still had pain in performing some of the physical tasks of his employment and was limited in his sports activities at the time of trial. In view of the present cost of living and the diminished purchasing power of the dollar, $9,000 in general damages does not seem excessive. See *McAfee v. Ogden Ry. & Depot Co.,* supra. Additionally, the trial court's indication of his approval by not interfering with the verdict or granting a new trial on his own motion reaffirms our confidence in the jury verdict. See *Prince v. Peterson,* supra; *State Road Commission v. Kendell,* 20 Utah 2d 356, 438 P.2d 178 (1968); and *Geary v. Cain,* 69 Utah 340, 255 P. 416 (1927).

The $12,000 awarded in punitive damages against Val is another matter. The amount of punitive damages to be awarded is left to the discretion of the jury unless it acts motivated by passion or preju-

dice. *Terry v. Zions Cooperative Mercantile Institution,* Utah, 605 P.2d 314 (1979); *Powers v. Taylor,* 14 Utah 2d 152, 379 P.2d 380 (1963). However, punitive damages must bear a reasonable relationship to actual damages. *Kesler v. Rogers,* Utah, 542 P.2d 354 (1975); *Prince v. Peterson, supra.* Cf. *Nash v. Craigco, Inc.,* Utah, 585 P.2d 775 (1978). Nonetheless, punitive damages need not be a certain percentage of or even less than general damages. *Leigh Furniture & Carpet Co. v. Isom,* Utah, 657 P.2d 293, and cases cited therein.

■ Some factors to be considered in determining the amount of damages to be awarded are: The particular nature of the defendant's acts, the probability of those acts being repeated in the future, the relative wealth of the defendant, the effect of his misconduct on the lives of the plaintiff and others, the relationship between the parties, the facts and circumstances surrounding the misconduct, and the amount of actual damages awarded. *First Security Bank of Utah v. J.B.J. Feedyards, Inc.,* 653 P.2d 591 (1982) and cases cited therein; *Terry v. Zions Cooperative Mercantile Institution, supra.* See also *Elkington v. Foust,* Utah, 618 P.2d 37 (1980); *Holdaway v. Hall,* 29 Utah 2d 77, 505 P.2d 295 (1973); *Monter v. Kratzers Specialty Bread Co.,* 29 Utah 2d 18, 504 P.2d 40 (1972) regarding the conduct of defendant.

Here, there was evidence against Val that his participation was reprehensible. He not only joined in the first fight with Joe and the others, but he also attacked Santos again after he had been beaten, when he was bleeding and dazed and after the fight had subsided. Even though he was bigger than Santos, had three other big men in his company, and had been trained in ways to control an assailant, Val in his own words, continued, once on top of Santos, to hit Santos anywhere he could since Santos was hitting him. He also kneed Santos in the ribs, hit him in the head and kicked him. While evidence suggested that Joe and the others were also brutal, the evidence against Val, in particular, was substantial. Furthermore, it is reasonable to conclude that the effect of his misconduct contributed in large part to the harm suffered by Santos—some of which, if not permanent in nature appeared to have been prolonged.

■ Punitive damages should be more than an inconvenience to Val. Their amount should be sufficient to discourage him, or anyone similarly situated, from repeating such conduct in the future. However, the record contains no evidence that his disposable income of $567.05 semimonthly as a salaried policeman (indicated in the record by a writ of garnishment) was known to the jury. Nor does the record contain any evidence of his assets or net worth which the jury could have considered in determining the amount they would award. In view of that void and the fact that the jury was generous in its award of general damages, we conclude that the punitive damages against Val were excessive and should be reduced to $6,000. This reduction should in no way be taken to condone Val's deplorable actions.

■ Val also contends that he was made to answer for the acts of all defendants and not just his own. He argues that he has been made to bear a disproportionate amount of the damages which is unfair because he was not the instigator of the fight and because all of the Montoyas were not similarly brought to trial. For authority he relies upon U.C.A., 1953, § 78–27–40(2) which states:

When there is a disproportion of fault among joint tort-feasors to an extent that it would render inequitable an equal distribution by contribution among them of their common liability, the relative degrees of fault of the joint tort-feasors shall be considered in determining their prorata shares, *solely for the purpose of determining their rights of contribution among themselves,* each remaining severally liable to the injured person for the whole injury as at common law. [Emphasis added.]

This statute applies to joint tort-feasors' rights of contribution. It does not support

Val's argument nor mandate that the plaintiff must obtain jurisdiction over all the tort-feasors and bring them to trial so that the proportion of fault of each may be there determined. Further, the manner in which the Montoyas were brought to trial does not diminish the damage Santos suffered or Val's participation in and liability for the assault. With respect to general and special damages, Santos concedes that the maximum amount he can collect from all of the defendants is $9,000 general damages and $869.80 special damages. If these amounts are paid by Val, he is not precluded from exercising his right to seek contribution from the other Montoyas. However, punitive damages reflect each individual's participation in the beating; and, based upon the evidence presented here, it was not unreasonable to reflect the differing participation in the amounts awarded against each defendant. The assumption that the instigator of the fight and not Val should suffer the most damages is factually unfounded in this case.

▬ Neither did the trial court misapply joint and several liability as Val contends. U.C.A., 1953, § 78–27–41(1) allows the injured party to collect from the tort-feasors individually for the whole injury as at common law. Val offers no support for his argument that Santos will recover payment for his medical bills and lost wages twice. Santos' concession mentioned above and the law are to the contrary.

## INSTRUCTIONS

Val claims error in being denied a comparative negligence instruction as to the contribution of Santos to his own injury. He cites State in the *Interest of M— S—,* Utah, 584 P.2d 914 (1978), and *Burrows v. Hawaiian Trust Co.,* 49 Hawaii 351, 417 P.2d 816 (1966) for the proposition that while contributory negligence is not a defense to battery, the plaintiff should act reasonably in defending himself.

▬ It would have been improper to have given jury instructions on comparative negligence and on the plaintiff's contribution to his own injuries in an intentional

battery case such as this. Instructions on self-defense and mutual combat were properly given. The jury was allowed to determine the nature of Santos' participation as well as its reasonableness. Taken as a whole, the instructions which were given were proper. There was no error on this point.

## REPRESENTATION OF COUNSEL

▬ Val complains that his trial counsel argued in support of Mike's motion for a directed verdict and that his counsel failed to make a motion for a new trial under Rule 59 of the Utah Rules of Civil Procedure. Val argues that this act and omission require that he be granted a new trial. He cites no authority for this proposition—and with good reason. A civil action is not reversed because privately retained counsel was incompetent. If trial counsel was indeed incompetent, then Val may be entitled to seek redress against him in a separate action.

## DIRECTED VERDICT

At the close of Santos' case, Mike, acting pro se, moved to have the case against him dismissed. The court took the motion under advisement and did not rule upon it until Mike had testified, the defendants had rested, and the case had been submitted to the jury. While the jury deliberated, the court determined that Santos had not established a prima facie case against Mike. Consequently, it granted a directed verdict and subsequently disregarded the jury's verdict which awarded $289.74 in special damages, $1,000 in general damages and $1,500 in punitive damages against Mike. Santos seeks a new trial against Mike contending that there was evidence presented of his involvement in the fight requiring the question to be submitted to the jury.

▬ In directing a verdict the trial court may not weigh the evidence. *Finlayson v. Brady,* 121 Utah 204, 240 P.2d 491 (1952); *Utah State Nat. Bank v. Livingston,* 69 Utah 284, 254 P. 781 (1927). Rather, the court must consider the evidence in

the light most favorable to the party against whom the motion is directed and resolve controverted facts in his favor. *Mel Hardman Productions, Inc. v. Robinson,* Utah, 604 P.2d 913 (1979); *Boskovich v. Utah Constr. Co.,* 123 Utah 387, 259 P.2d 885 (1953); *Christiansen v. Los' Angeles & S.L.R. Co.,* 77 Utah 85, 291 P. 926 (1930). If the evidence and its inferences would cause reasonable men to arrive at different conclusions as to whether the essential facts were or were not proved, then the question is one of fact for the jury. *Christensen v. Utah Rapid Transit Co.,* 83 Utah 231, 27 P.2d 468 (1933). Unless the evidence is wholly lacking and incapable of reasonable inference to prove some issue which supports the plaintiff's claim, a court should not direct a verdict for the defendant. *Ellerbeck v. Continental Casualty Co.,* 63 Utah 530, 227 P. 805 (1924). See also State, by and through *Forester v. Dan Estremado* 45 Or.App. 967, 609 P.2d 893 (1980); *Mark v. Pacific Gas and Electric Co.,* 101 Cal. Rptr. 908, 7 Cal.3d 170, 496 P.2d 1276 (1972); *Sanderson v. Safeway Stores, Inc.,* 161 Colo. 271, 421 P.2d 472 (1967).

As to Mike's participation, Darla testified:

A. Joe threw a punch and knocked him right down.

Q. At that time was there anybody else around?

A. At that time yes. By then the others were right behind him, three other—I don't know—Montoyas were right behind him.

Q. The two Montoyas that are here, Mike and Val, were they there?

A. Yes.

Q. When you say "the Montoyas came over," Michael and Val came over?

A. Right.

Q. After the blow was thrown, what happened then?

A. Then all of them were on top of Santos. Some of them were kicking him, others hitting him and pulling his hair, picking up his head and hitting him in the face. He was constantly being hit in the back and face. (Trial Record at 241).

Later in direct testimony she stated:

Q. Can you specifically say that you saw any individual defendant hit Santos?

A. Yes. On the first fight I can say I saw Joe hit him, and on the second fight I could specifically say I saw Val. And all the others were kicking at him. I cannot say I saw all of them kicking at him and hitting at him. (Trial Record at 249).

After testifying that Joe came over to his table with Val, "Monty" and Mike, and that Joe punched him, Santos stated he was hit and kicked and covered up so that he couldn't see who was doing what. He then testified:

Q. When they let you up and walked away, how many guys were there?

A. When they were walking away there was four of them walking away. (Trial Record at 330).

Later he testified:

Q. And the people that were walking to the table, who were they?

A. I seen Val and Joe and Dave. They was walking towards the table. And they were telling me again that's what I get for starting it.

Q. Okay. Did you see the fourth one? You indicated you saw three walking toward the table.

A. Yes, I seen him.

Q. Where was the fourth one?

A. I seen those three, I do remember them three, then this other one, which I assume was Mike, there was four going back again. (Trial Record at 336).

Mike's own testimony placed him among the other Montoyas during the fight. The testimony is not wholly lacking and incapable of reasonable inference that Mike participated in the fight. Rather, the trial record would cause reasonable men to differ as to whether the essential facts were or were not proved. Since the trial judge may

not weigh the evidence, it was his duty to send the question to the jury.

█ Although he committed error in directing the verdict, the court, in fact, allowed the jury to consider all of the evidence concerning Mike so there is no necessity for a new trial. Consequently, the directed verdict is set aside and Case No. 17646 is remanded with instructions to enter judgment on the verdict against Mike. Judgment against Val in Case No. 17670 is affirmed with the modification of punitive damages to the amount of $6,000. No costs awarded.

HALL, C.J., and STEWART, OAKS and DURHAM, JJ., concur.