Earl Philip MORGAN; Eartl D. Morgan; Alice Jean Tomren; Evelyn Neville; and Floria M. Broadbent, Plaintiffs and Respondent,

v.

**QUAILBROOK CONDOMINIUM COMPANY, Defendant and Appellant.**

**No. 18623.**

Supreme Court of Utah.

Aug. 6, 1985.

Reed L. Martineau, Rex E. Madsen, Salt Lake City, for defendant and appellant.

Clifford L. Ashton, E.J. Skeen, Paul M. Durham, Salt Lake City, for plaintiffs and respondent.

ZIMMERMAN, Justice:

Defendant Quailbrook Condominium Company ("Quailbrook") appeals from a jury verdict awarding the plaintiffs, members of the Morgan family, $25,000 for intentional invasion of their land by the discharge of surface waters and $4,000 for intentional interference with plaintiffs' supply of irrigation water for their crops. Quailbrook contends that the court erred in assuming that the intentional discharge of water onto the Morgan property was sufficient to render it liable for any resulting damages because the proper legal standard requires, in addition to the intentional discharge, an intent to inflict the resulting harm. The evidence, asserts Quailbrook, does not show such an intention. Alternatively, Quailbrook claims the jury instructions failed to adequately state the law. We affirm the judgment below.

The Morgans and Quailbrook own adjacent land in Salt Lake County. The Morgan property lies to the west of and below Quailbrook's land. Prior to development, Quailbrook's property contained a runoff and spring-fed pond formed by damming a natural depression. Water from the pond flowed out at two places. One outlet was to the west, the water running across the top of the dam and through a channel across the northern end of plaintiffs' land.

The other outlet was to the south. Water flowing through this outlet reached plaintiffs' land through a small irrigation ditch that ran over Quailbrook's property.

Before developing its land, Quailbrook hired independent engineers to do design work. Their plan for dealing with the discharge of surface waters, in compliance with Salt Lake County Flood Control requirements, called for Quailbrook to remove the dam and drain the pond. In its place, Quailbrook built a new and much larger retention pond and installed a twelve-inch pipe at the north end to drain pond water onto plaintiffs' land. Approximately two-thirds of the surface and spring waters from Quailbrook's property drained onto the Morgan property through this pipe. Later, at plaintiffs' insistence, Quailbrook also installed a six-inch pressurized pipe to convey water onto the south end of the Morgan property previously served by the irrigation ditch.

Quailbrook's engineers testified at trial that the flow across the Morgan property after development approximated the predevelopment natural flow. Plaintiffs, however, adduced evidence that the flow rate had increased several fold after development and that, rather than coming onto the Morgan property at a number of points, this flow was concentrated as to place of discharge and was polluted with road oils and salts and swimming pool chlorine. Plaintiffs claimed to have suffered damages as a result of the increased, concentrated, and polluted flow. In addition, plaintiffs asserted that the six-inch irrigation pipe was installed only after repeated requests and was never capable of providing the irrigation water needed to replace that flowing through the old ditch. Any attempt to use the pressurized pipe blew out manhole covers and flooded defendant's tennis courts. As a result, plaintiffs claimed to have lost $4,000 worth of crops that had been irrigated by water from the south outlet.

At the conclusion of the trial, the jury was instructed that Quailbrook would be liable on the first claim—intentional inva-

sion of the Morgan property by the discharge of surface waters—only if it had unreasonably interfered with the preexisting flow. The jury was similarly instructed that Quailbrook would be liable on the second claim—intentional interference with plaintiffs' irrigation water rights—only if the interference was unreasonable. The jury, on special verdicts, found for plaintiffs on both claims, fixing damages at $25,000 and $4,000, respectively.

On appeal, Quailbrook argues that the verdict must be reversed. With respect to the first claim, Quailbrook asserts that there was no proof it intended to harm the plaintiffs by its design and construction of the retention pond and the resultant discharge of surface waters; it contends that under the standard set by this Court in *Sanford v. University of Utah*, 26 Utah 2d 285, 488 P.2d 741 (1971), proof of such an intention to harm is a prerequisite to recovery. Alternatively, Quailbrook claims that the jury instructions did not accurately state the law.

■ In *Sanford*, this Court adopted the rule, set out in section 833 of the Restatement of Torts, that an actor who interferes with the normal flow of surface waters across another's land may be liable to the other under the general rules applicable to private nuisance, *i.e.*, one is liable for harm caused by an invasion of another's interest in the use and enjoyment of his land if the invasion is "intentional and unreasonable," or if the invasion is "otherwise actionable under rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." Restatement (Second) of Torts §§ 822, 833 (1977); *see* Restatement (Second) of Torts §§ 821A through 840E (1977).[1] While *Sanford* was a split decision, the dispute among members of the Court was not as to the proper rule of law, only its application to the facts of that case. Quailbrook contends that under *Sanford* and the Restatement, one must intend the harm that re-

sults before there can be liability for an intentional interference with surface waters. There is no language in *Sanford* precisely on point; however, the Restatement relied upon in *Sanford* addresses the matter and does not support Quailbrook's position.

■ An "invasion of another's interest in the use and enjoyment of land" is intentional "if the actor (a) acts for the purpose of causing *it*, or (b) knows that *it* is resulting or is substantially certain to result from his conduct." Restatement (Second) of Torts § 825 (1977) (emphasis added). Quailbrook first argues that the word "it" in section 825 means the harm that results from the action complained of. This reading of the Restatement seems plainly wrong. The "it" referred to is the invasion of the other's interest in the use and enjoyment of the land, not the harm that the invasion may produce.

Quailbrook's second argument is that whether the "it" in section 825 is the invasion or the harm, the evidence is insufficient to support a finding by the jury that Quailbrook had the requisite mental state. The comments to section 825 are on point.

> To be "intentional," an invasion of another's interest in the use and enjoyment of land ... need not be inspired by malice or ill will on the actor's part toward the other. An invasion so inspired is intentional, but so is an invasion that the actor knowingly causes in the pursuit of a laudable enterprise without any desire to cause harm. It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion. He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct....

**1.** Although *Sanford* cited the Restatement of Torts, published in 1939, there is no significant difference between the first and second restate-ments and their comments insofar as they are pertinent to the present case. Therefore, for convenience, only the second is cited here.

*... Most of the litigation over private nuisances involves situations in which there are continuing or recurrent invasions resulting from continuing or recurrent conduct.... In these cases the first invasion resulting from the actor's conduct may be either intentional or unintentional; but when the conduct is continued after the actor knows that the invasion is resulting from it, further invasions are intentional.*

Restatement (Second) of Torts § 825 comments c & d (1977) (headings omitted, emphasis added).

■ To sustain a finding of an intentional tort under section 825, then, it is sufficient to demonstrate that the actor maintained the condition after he knew that it was causing an invasion of another's interest in the use and enjoyment of land. This rule was applied in *Sanford*. There the Court affirmed an award of damages for an intentional discharge of surface waters on the apparent ground that the defendant University knew of the harm that would result from the condition it created because there had been a previous incident in which surface water had also invaded plaintiff's land.

■ In the present case, Quailbrook claimed to have reasonably relied on its engineers for the initial design and construction work, and no substantial evidence appears to support a finding to the contrary. Had the invasion occurred only once, this reliance would have insulated Quailbrook from a finding of the requisite intent. However, several witnesses testified that on numerous occasions plaintiffs complained to Quailbrook personnel about the change in the surface water discharge. Therefore, there is substantial evidence that after Quailbrook learned of the invasion resulting from its work, it failed to take corrective action and the invasion continued. If Quailbrook knew the consequences of its work and failed to alter its surface drainage system, then under the Restatement, the jury was justified in finding that Quailbrook had the requisite mental state for an intentional tort. The jury then only needed to find that the invasion was unreasonable, which it did.[2] *See* Restatement (Second) of Torts §§ 825, 826 (1977).

■ Quailbrook next generally challenges the sufficiency of the evidence to support the verdict on the intentional tort.[3] Although most of the issues were the subject of conflicting testimony at trial, there is ample record evidence to support the jury's finding that defendant intentionally and unreasonably interfered with plaintiffs' use and enjoyment of their land.[4]

**2.** One of the elements of the intentional tort is that the invasion be unreasonable. Restatement (Second) of Torts §§ 822, 826 (1977). In this case, the trial court did instruct on unreasonability, although not in the terms required by the Restatement, and the jury found the invasion to have been unreasonable. Although Quailbrook has raised a question as to the adequacy of the instructions given on this point, we find that it has not properly preserved the question for appeal. *See* pages 578–579, *infra*.

**3.** It is worth noting that Quailbrook seems to misperceive its burden in challenging fact findings. A jury's findings will not be overturned unless there is no substantial evidence to support them. *See Buckley v. Cox*, 122 Utah 151, 153, 247 P.2d 277, 279 (1952); *Ewell & Son, Inc. v. Salt Lake City Corp.*, 27 Utah 2d 188, 192, 196, 493 P.2d 1283, 1285, 1288 (1972). The party bringing the challenge has the burden of marshalling all the evidence in support of the findings and demonstrating that the evidence is insufficient, even when viewed in the light most favorable to the findings. *Scharf v. BMG Corporation*, Utah, 700 P.2d 1068, 1070 (1985). Quailbrook has not even attempted to meet this burden with respect to most of its challenges to the jury's findings.

**4.** There was some evidence at trial that as a result of Quailbrook's activities, the water discharged onto plaintiffs' land was polluted with swimming pool effluent, road tar, and salt. In *Branch v. Western Petroleum, Inc.*, Utah, 657 P.2d 267 (1982), this Court adopted a rule of strict liability for the pollution of ground waters that is at odds with the fault approach adopted by the Restatement with respect to all ground and surface water matters. *See, e.g.*, Restatement (Second) of Torts § 832 (1977). It may be that the water scarcity rationale relied upon by the *Branch* Court in rejecting the Restatement's fault approach with respect to ground water pollution applies equally to the question of whether there should be strict liability for pollution, as distinguished from diversion, of surface

Quailbrook also challenges the sufficiency of the evidence to support the jury's finding that it intentionally interfered with plaintiffs' right of way to water in an irrigation ditch. Quailbrook disputes that any ditch ever existed and argues that, in any event, it cannot be liable because it installed a six-inch pipe in lieu of the claimed ditch and because plaintiff Earl Morgan approved of this installation. While some witnesses testified in support of Quailbrook's version of the facts, others testified that a ditch did flow across the Quailbrook property before development, that it was filled in during construction, that Quailbrook did not replace it with an irrigation pipe until plaintiffs had complained for more than a year, and that the pipe as installed was useless. Clearly, there was substantial evidence from which the jury could have found that a ditch existed and that Quailbrook interfered with the flow of water through it to the Morgan property.

Quailbrook's attempt to challenge the finding of liability for interference with the ditch on the basis of Earl Morgan's approval of the installation of the six-inch pipe also fails. Utah law provides that anyone who obstructs or changes a watercourse without the permission of the right-of-way owner is guilty of a misdemeanor and subject to damages. U.C.A., 1953, § 73–1–15 (1980 ed.). Quailbrook asserts that because one of the plaintiffs agreed to the installation of the six-inch pipe, there was a waiver of the claim. That agreement cannot obviate Quailbrook's liability. First, plaintiffs had a right to have the water flow without interruption. When Quailbrook agreed to install a pipe after interfering with the flow, it was doing nothing more than attempting to mitigate the harm it had caused. Earl Morgan's acquiescence in this action does not, as a matter of law, operate as a waiver. A finding of waiver requires that the conduct of the actor demonstrate an intentional relinquishment of a known right. *See, e.g., Hunter v. Hunter*, Utah, 669 P.2d 430, 432

(1983). On the facts presented, Earl Morgan's actions could as easily have been motivated by a desire to get water to the south end of the Morgan property.

Second, although one of the plaintiffs did agree to the installation of the pipe to replace the ditch, the plaintiffs certainly did not agree to having their water supply from that pipe cut off when the pipe malfunctioned. Because the plaintiffs' water right was interfered with by Quailbrook's initial development work and by the non-functional pipe Quailbrook subsequently installed, the jury's award of damages was proper.

Quailbrook's final contention is that the jury instructions were incomplete and inaccurate and fatally infected the verdict. Quailbrook makes three arguments respecting the instructions. First, the court failed to instruct the jury on the mental state required to render the invasion intentional. Second, in accordance with *Sanford*, the court instructed the jury that liability for an invasion of property through the discharge of surface waters requires that the discharge be unreasonable; however, its total failure to define what constitutes "unreasonable" constitutes reversible error. Finally, the instruction on interference with plaintiffs' right to irrigation water was improperly phrased in terms of strict liability.

These claims of error are not without merit. In *Harris v. Utah Transit Authority*, Utah, 671 P.2d 217, 220 (1983), we held that it is reversible error for a court to take from a jury a factual issue on which there is disputed evidence. In light of *Harris*, Quailbrook argues that the trial court's failure to instruct the jury on the requisite mental state for the two torts and to define "unreasonable" resulted in the direction of a verdict for the plaintiffs on those issues. Even assuming, *arguendo*, that the court's instructions were erroneous because they took issues from the jury upon which there was conflicting evidence, under the circum-

waters. However, since the issue was not argued by either party, we decline to reach it here.

stances of this case we will not reverse the jury's verdict.

■ An examination of the record shows that Quailbrook failed to properly object to the instructions below and explained its grounds for challenging the instructions only on appeal. At trial, Quailbrook's only objections to the instructions consisted of general statements that they did not correctly state the law. Our rules of civil procedure require that to preserve an objection for appeal, a party must object with specificity at trial. Utah R.Civ.P. 51. In *Employers' Mutual Liability Insurance Co. v. Allen Oil Co.*, 123 Utah 253, 262, 258 P.2d 445, 450 (1953), we considered the adequacy of an objection identical to that made by Quailbrook's counsel at trial; there we refused to pass on a question when the sole objection made below was that the instruction was "not supported by, and is contrary to, the law." 123 Utah at 263, 258 P.2d at 450. Such an objection was insufficient in 1953, and it remains so in 1985. *See Beehive Medical Electronics, Inc. v. Square D Co.*, Utah, 669 P.2d 859 (1983).

■ Although Rule 51 gives this Court some latitude on appeal to consider objections not properly preserved below, the present case is not one that warrants the exercise of such discretion. First, there is ample evidence to support the verdict reached by the jury under the proper legal standard. Second, the instructions about which Quailbrook complains are substantially identical to the instructions Quailbrook's counsel submitted at trial. Those instructions did not contain any definition of or instruction on intent, nor did they define the word "unreasonable." Defendant cannot now be heard to complain.

For the reasons given above, we affirm the trial court on all grounds.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.