Richard H. VanDYKE, Plaintiff and Respondent,

v.

MOUNTAIN COIN MACHINE DISTRIBUTORS, INC., Defendant and Appellant.

No. 880129–CA.

Court of Appeals of Utah.

Aug. 3, 1988.

Dennis K. Poole, Marilynn P. Fineshriber, Duane R. Smith (argued), Poole, Cannon & Smith, Salt Lake City, for defendant and appellant.

Michael L. Miller (argued), Brigham City, for plaintiff and respondent.

Before GREENWOOD, GARFF and BENCH, JJ.

## OPINION

GREENWOOD, Judge:

Defendant, Mountain Coin Distributors, Inc., appeals from a jury verdict awarding plaintiff, Richard VanDyke, $250 in actual damages and $37,000 in punitive damages on a claim for breach of contract and abuse of process. Mountain Coin appeals, claiming the trial court erred in: 1) ruling that Mountain Coin breached the parties' contract; 2) giving certain instructions to the jury; and 3) failing to remit the punitive damage award.

In October 1983, VanDyke purchased a video game from Mountain Coin for about $5,000. In November 1983, VanDyke informed Mountain Coin's division manager, Merlin Symes, that he wanted to return the game. Symes refused to accept return of the game. VanDyke refused to make payment, and in late February 1984, Mountain Coin filed suit against VanDyke to recover the purchase price. Upon receiving the complaint, VanDyke contacted Symes who told VanDyke the lawsuit would be resolved if VanDyke would sign an installment contract and make a $500 downpayment. VanDyke received the contract several days after the telephone conversation. On March 4, Mountain Coin's attorney, Carl Kingston, contacted Mountain Coin and asked if VanDyke had settled the account or if a default judgment should be entered. Symes advised Kingston that the contract had been sent to VanDyke, that VanDyke had not returned the contract or made payments, and that Kingston should prepare a default judgment. Kingston sent a default judgment to the court on March 14, 1984. By March 15, 1984, Mountain Coin had received the signed contract, dated February 27, 1984, and a $500 check from VanDyke. On March 20, 1984, the court entered a default judgment against VanDyke.

The judgment was subsequently filed in Box Elder County on April 16, 1984. On May 1, VanDyke was served with a motion and order in supplemental proceedings. VanDyke contacted Symes who confirmed that the check and contract had been received and informed VanDyke that he would not have to appear for the supplemental proceedings. VanDyke also spoke with Kingston who stated that the collection action would be suspended and that VanDyke need not appear. The evidence was disputed as to whether Kingston was aware at that time that VanDyke had signed a contract. VanDyke did not appear at the supplemental proceedings.

In December 1984, VanDyke applied for a loan and learned that Mountain Coin's judgment constituted a lien on his property. VanDyke contacted Kingston and requested release of the judgment. Kingston wrote to VanDyke and told him that he could not release the judgment because VanDyke was not current on the payment schedule of the installment contract and owed Mountain Coin on an open account.

On February 27, 1985, Kingston again initiated supplemental proceedings. VanDyke hired a lawyer who charged $250 to contact Kingston and request that the judgment be set aside based on the parties' prior settlement. On June 19, the parties filed a stipulation setting aside the judgment. VanDyke ultimately obtained his loan but was required to roll over short term notes several times and provide additional information to the bank.

VanDyke brought this action for abuse of process and breach of contract. Mountain Coin counterclaimed for the amount

due on the open account. VanDyke stipulated that he was indebted to Mountain Coin for $1,493.98 on the video equipment agreement and $777 on the open account. The trial court ruled that Mountain Coin breached the parties' agreement and instructed the jury that VanDyke was entitled to damages reasonably incurred in removing the judgment and punitive damages if the breach of contract was intentional and accompanied by malice. The jury awarded VanDyke $250 in actual damages and $37,000 in punitive damages.

Mountain Coin filed a motion for remittitur or, in the alternative, a new trial claiming that the punitive damage award was excessive and was given under the influence of passion and prejudice. The court issued a memorandum decision denying the motion and this appeal followed.

## I

■ First, we examine whether the trial court erred in ruling as a matter of law that Mountain Coin breached the settlement agreement. In reviewing a directed verdict, we examine the evidence in the light most favorable to the losing party. *Mel Hardman Prod., Inc. v. Robinson*, 604 P.2d 913, 917 (Utah 1979); *Gregory v. Fourthwest Inv. Ltd.*, 754 P.2d 89, 90 (Utah Ct.App.1988). If the evidence could lead reasonable persons to opposing conclusions, the directed verdict should not be affirmed. *Gregory*, 754 P.2d at 90.

■ In this case, the trial court directed a verdict advising the jury that Mountain Coin breached the contract by proceeding with the lawsuit despite VanDyke's execution of the installment contract and payment of $500. Mountain Coin claims that an issue of fact exists concerning whether and by whom the settlement agreement was breached. Mountain Coin asserts that VanDyke breached the contract by failing to timely comply with the terms of the settlement agreement. We disagree. The record contains no indication that VanDyke was required to execute and return the installment contract within any specified period of time. In the absence of such a requirement, under general contract law

principles, VanDyke's power to accept the offer continued for a reasonable amount of time. 1 Corbin on Contracts 2d Ed. § 36 (1963). At most, VanDyke waited two weeks before mailing the installment contract and downpayment check. Two weeks is a reasonable amount of time to respond under the circumstances in this case.

■ Furthermore, Mountain Coin's breach of contract is clear from the undisputed facts. Several days after the conversation between Symes and VanDyke, which was supposed to resolve the lawsuit, Symes advised Kingston to prepare a default judgment. Kingston sent the default judgment to the court on March 14, and by March 15, Mountain Coin received the signed installment contract and downpayment. Mountain Coin did not repudiate the settlement contract by rejecting VanDyke's performance. The court entered the default judgment on March 20, 1984. Thus, Mountain Coin proceeded with the lawsuit despite consummation of the parties' agreement resolving the lawsuit. Moreover, Mountain Coin continued to pursue the lawsuit after receiving additional payments under the installment contract. Under these circumstances, we find that reasonable persons could not differ as to whether Mountain Coin breached the contract. Therefore, we hold that the trial court did not err in directing a verdict that Mountain Coin had breached the settlement agreement.

## II

■ We next address whether the trial court erred in instructing the jury. Preliminarily, we must determine whether Mountain Coin preserved its objections to the instructions. If a party fails to object to a jury instruction, the objection is deemed waived on appeal. *Hill v. Cloward*, 14 Utah 2d 55, 377 P.2d 186, 187–88 (1962); *State v. Parkin*, 742 P.2d 715, 716 (Utah Ct.App.1987). One of the purposes in requiring objections is to bring all claimed errors to the trial court's attention to give the court an opportunity to correct the errors if appropriate. *Employers' Mut. Liability Ins. Co. v. Allen Oil Co.*, 123 Utah 253, 258 P.2d 445, 450 (1953). The objec-

tion must be specific enough to put the trial court on notice of every error which is complained of on appeal. *Id.*

In this case, Mountain Coin's attorney raised an objection to the following interrogatory and explanation.

What sum do you find proven by a preponderance of the evidence should be awarded to the plaintiff as compensation damages for the defendant's wrongful entry of a default judgment in Salt Lake County and/or in filing of a judgment in Box Elder County that lienned [sic] the plaintiff's real property?

*Explanation:* ... The court finds that the parties agree the plaintiff still owes certain sums on that contract. The court will enter a judgment on that portion of the claim in the defendant's favor together with the sum still owed on the open account. The court also finds that the contract and the $500.00 payment was made before the default judgment and/or filed the judgment [sic] in Box Elder County.

Mountain Coin objected to the instruction, stating:

Your Honor, I believe that I have two exceptions. One is with respect to the explanation to instruction three on page two. The sentence reads, "The court also finds that the contract and $500 payment was made before the default judgment and/or filed the judgment in Box Elder County." I think obviously the testimony was such that Mr. Kingston prepared the application of that or the preparation of that default judgment prior to the time of that payment. So that is of concern to me.

On appeal, Mountain Coin claims two errors in the instructions. First, Mountain Coin contends that instruction number three was erroneous because it directed a verdict against Mountain Coin on the breach of contract issue. We have previously rejected that assertion. Second, Mountain Coin contends that the court failed to sufficiently articulate that the jury must find actual malice before it may award punitive damages. That objection was not raised at trial and is therefore deemed waived on appeal.

### III

Finally, we examine whether the the trial court erred in not remitting the jury's punitive damage award or ordering a new trial. Generally, this Court will defer to the finder of fact's punitive damage award. *First Sec. Bank of Utah v. J.B.J. Feedyards, Inc.,* 653 P.2d 591, 599 (Utah 1982)). However,

where it appears that such an award has resulted from passion or prejudice rather than from reason and justice, this Court must not permit it to stand. In the absence of evidence in the trial record evincing such passion or prejudice, such may be shown by the excessive amount of the punitive damages award itself.

*Id.* Further, when a punitive damage award is "so flagrantly excessive and unjust" as to indicate a disregard of the rules governing damages, then it may be reviewed and corrected as a matter of law. *Id.* at 599 (quoting *Falkenberg v. Neff,* 72 Utah 258, 269 P. 1008, 1013 (1928)).

In determining the amount of the award, the jury and the trial judge reviewing the award should consider:

the relative wealth of the defendant, the nature of his alleged misconduct, the facts and circumstances surrounding such misconduct; the effect thereof upon the lives of the plaintiff and others, the probability of future recurrence of the misconduct, the relationship between the parties, and the amount of actual damages awarded.

*Id.; see also Cruz v. Montoya,* 660 P.2d 723, 727 (Utah 1983); *Bundy v. Century Equip. Co.,* 692 P.2d 754, 759 (Utah 1984). In addition, "punitive damages must bear a reasonable relationship to actual damages." *Cruz,* 660 P.2d at 727.

The Utah Supreme Court has applied the foregoing authority in several recent cases. In *Nelson v. Jacobsen,* 669 P.2d 1207, 1218–19 (Utah 1983), the Court reversed an award of punitive damages which was entered in the absence of any evidence regarding defendant's net worth or income.

Similarly, the Utah Supreme Court reduced a punitive damage award where the jury's general damage award was generous and the record contained no evidence of defendant's wealth. *Cruz*, 660 P.2d at 727. Finally, the Court reduced a punitive damage award from $100,000 to $50,000 where the evidence did not show vindictiveness or ill will so extreme as to warrant the sum awarded. *First Security*, 653 P.2d at 599.

Most recently, the Utah Supreme Court ordered a new trial on the issue of punitive damages where: 1) the record was devoid of evidence of defendant's wealth; 2) the probability defendant would repeat the conduct was low; 3) the conduct was not motivated by vindictiveness or ill will toward plaintiff; and 4) the $25,000 punitive damage award was grossly disproportionate (11.72 to 1 ratio) to the actual damage award of $2,133. *Bundy*, 692 P.2d at 760.

In reviewing the amount of the punitive damage award, we have examined the trial court's memorandum decision and the record to determine if the punitive damage award is excessive. We agree with the trial court that the conduct was particularly egregious because it was "deliberate misconduct done under the advise [sic] of an attorney." We also defer to the court's observation that the misconduct "was terribly upsetting to [VanDyke] as he was attempting to refinance his home." Mortgage rates had dropped and VanDyke believed he could not refinance his home due to the judgment. Finally, we are persuaded, as was the trial court, that to award a few hundred or a few thousand dollars would serve no useful purpose. Mountain Coin would absorb such small losses painlessly and continue its collection practices.

However, we disagree with two portions of the memorandum decision. First, the decision states, "There is in this case an exhibit which shows that the defendants were prepared to acknowledge during discovery that the net worth of the parent corporation was at least one and one-half million dollars." The only exhibit in the record concerning Mountain Coin's assets states that, as of January 1986, Mountain Coin had $1,251,346 in total assets and $715,721 in current and fixed liabilities. Thus, Mountain Coin's net assets are much less than the amount relied upon by the court in its memorandum decision. Second, the trial court disregarded the cases finding punitive damages excessive where they were disproportionate to the actual damage award, reasoning that those cases, unlike this case, were based on the absence of evidence of defendant's wealth. In *First Security*, *Cruz* and *Bundy*, the Utah Supreme Court clearly stated that the punitive damage award must have a reasonable relationship to the actual damage award. Further, in *Bundy*, the Court held that a relationship of punitive damages to actual damages was grossly disproportionate where the punitive damages were 11.72 times the amount of actual damages.

In this case, VanDyke was awarded $250 in actual damages and $37,000 in punitive damages. Because defendant's wealth is roughly one-third that found by the trial judge and because the punitive damage award vastly exceeds the 11.72 to 1 ratio found to be grossly disproportionate in *Bundy*, we believe that the $37,000 punitive damage award is excessive as a matter of law and must not be permitted to stand. However, we also believe that a higher ratio of punitive damages to actual damages than that allowed in *Bundy* is appropriate in this case, because, unlike *Bundy*, the conduct in this case was found by the jury and the trial court to be motivated by vindictiveness and ill will. In addition, unlike *Bundy*, there is a probability of future recurrence of the conduct. When the appellate court determines that a damage award must not be permitted to stand, it may order a new trial on the issue of damages or, in the alternative, remission of a portion of the punitive damage award. *Bundy*, 692 P.2d at 760; *First Security*, 653 P.2d at 599. Because the record is sufficient in this case, we find the expense of a new trial to be unwarranted. We, therefore, reduce the punitive damage award to $12,500.

Affirmed in part and remanded for entry of an order in accordance with this opinion.

GARFF, J., concurs.

BENCH, Judge: (concurring and dissenting).

I concur, except in the amount of punitive damages awarded. To that section of the main opinion, I dissent.

In *Bundy v. Century Equipment Company, Inc.*, 692 P.2d 754 (Utah 1984), the Utah Supreme Court held "grossly disproportionate" punitive damages that were 11.72 times greater than the actual damages. Yet, in this case, the majority has allowed punitive damages 50 times greater than the actual damages. I concede that the amount of actual damages is only one of several factors to be considered and that there is a basis for "substantial" punitive damages in this case. Because of the defendant's relative wealth and ill will, and to discourage recurrence of the conduct, I would allow 10 times the actual damages suffered here, reducing the punitive damages to $2,500.